**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Johnnie Bernard MACK (86–1536),**
**Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Betty REESE (86–1832),**
**Defendant–Appellant.**

Nos. 86–1536, 86–1832.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 25, 1987.

Decided Jan. 4, 1988.

Michael E. Piston (argued), Southfield, Mich., for defendants-appellants.

Joseph E. Papelian, Asst. U.S. Atty., Detroit, Mich., John L. Belanger (argued), Warren, Mich., Patricia G. Blake (argued), for plaintiffs-appellees.

Before ENGEL, MERRITT and RYAN, Circuit Judges.

MERRITT, Circuit Judge.

In these two cases, consolidated for appeal, appellants Mack and Reese challenge their convictions for conspiracy to distribute heroin. Because we find no reversible error, we affirm.

On June 14, 1982, a woman brought a package to the Emery Air Freight office in Los Angeles. The package was addressed to Robert Mills of Detroit, Michigan. Although the shipping charge for the package was approximately $40, the woman shipping the package declared the value of its contents to be a mere five dollars. Suspicious of the package, the Emery employee who accepted it for shipment turned the

package over to his manager. The manager opened the package in the presence of Emery security officers. The package contained a toy stuffed rabbit. The back seam of the rabbit had been ripped open and resewn. When the seam was cut open, the manager discovered that the rabbit contained 251 sealed plastic bags containing white powder. The package was turned over to the Los Angeles Sheriff's Department.

A deputy sheriff performed a field test on the substance in the bags and determined that the white powder was a narcotic. The deputy kept ten of the bags to use as evidence against the woman who shipped the package. The rest of the bags were repackaged as nearly as possible to their original condition and shipped to Detroit.

In Detroit, a Drug Enforcement Administration agent posing as an Emery employee delivered the package on June 17, 1982. Johnnie B. Mills, the father of appellant Bernard Mack, accepted delivery. A short time later, DEA agents, acting pursuant to the terms of a lawfully obtained search warrant, searched the house to which the package had been delivered. They found the unopened package a few feet inside the front door. They also found five stuffed animals with the seams ripped out, two handguns, and $3800 in cash. Mills was arrested on a charge that was later dismissed. Appellant Mack, who also lived in the house and was present at the time of the search, was not arrested.

Nine months later, on March 29, 1983, DEA undercover agent Roy Adams was introduced to Antonia Wilford by a confidential informant. Adams told Wilford, who was Mack's lover, that he wanted to buy heroin from Mack. Wilford contacted Mack, who told her that he was too busy to make a heroin sale that day and instructed her to call June Hardy. That same day, Agent Adams purchased $450 worth of heroin from June Hardy. Wilford reported this to Mack.

Adams told Wilford he wanted to buy a larger quantity of heroin. On April 18, 1983, Agent Adams met Mack at Wilford's house. Mack sold Adams four bags of heroin for $1800 and paid $200 of that amount to Wilford for arranging the sale. Mack gave Adams a business card with a handwritten phone number that Mack said could be used to reach him to arrange further sales.

Laboratory tests showed that the 2.7 grams of heroin Agent Adams had purchased from Mack was only 39% pure. Adams complained to Mack about the quality of the heroin. On April 26, Mack and Adams met in downtown Detroit and Mack gave Adams 0.4639 grams of 90% pure heroin. Adams expressed interest in a larger purchase, but Mack said he was not in a position to sell a larger quantity because his supplier had not come to town.

A few days later, Agent Adams called Mack again to inquire whether his supplier had arrived yet. Mack indicated that he had not received any heroin recently, but promised to check on the price for an ounce or more.

On May 11, Wilford arranged for Agent Adams to meet Pauline Conley. Conley told Adams that Mack was receiving heroin from a source in California through various courier services. She also told Adams that approximately a year before, Mack's father had received a shipment of heroin from the California source and that the DEA had raided Mack's father's house shortly after that delivery. She said that the California source had instructed his people not to open packages that arrived late. The next day, Conley took Adams to the residence of Betty Reese. Adams told Reese he wanted to buy a quarter ounce of heroin. Reese took Adams and Conley to a house where she introduced Adams to a man called "Darnell." Adams purchased 2.07 grams of 54% pure heroin for $1700. Adams gave $50 to Reese and $100 to Conley for arranging the transaction.

Later the same day, Adams called Conley and told her he wanted to make another heroin purchase, this time without Reese. Conley, however, again arranged a meeting with both Reese and Darnell. Darnell told Adams he wanted $15,000, half of it up front.

Agent Adams balked at Darnell's request for up front money. The next day Reese told Adams she would deliver one ounce of heroin to him, without requiring up front money. Adams picked up Reese and then Darnell. He gave Reese $14,000 for a package of heroin, which laboratory tests revealed to be 25.76 grams of heroin which was only 6.6% pure.

On May 30, 1983, Reese called Agent Adams. She told Adams that she had been dealing with the same supplier in California for four or five years. She suggested that she could supply Adams with a kilogram or more of uncut heroin from her California source. Adams complained that the last heroin Reese had sold him through Darnell was not worth $14,000, so Reese agreed to exclude Darnell from future transactions. After this conversation the undercover operation ended, however, so no other transactions occurred.

On February 4, 1986, a grand jury returned a ten-count indictment charging Mack, Reese, Johnnie B. Mills (Mack's father), Pauline Conley, and Antonia Wilford with several narcotics offenses. Mack was named in three counts: count one, conspiracy to possess with intent to distribute and conspiracy to distribute heroin; count four, distribution of heroin on April 18, 1983; and count five, distribution of heroin on April 26, 1983. Reese was named in five counts: count one, the conspiracy count; count six, distribution of heroin on May 12, 1983; count seven, distribution of heroin on May 19, 1983; count nine, unlawful use of a communication facility on May 12, 1983; and count ten, unlawful use of a communication facility on May 19, 1983.

Mack, Reese, Mills, and Conley were tried together. Wilford entered a guilty plea to a count of unlawful use of a communication facility and testified at the trial. Mack was convicted of all three offenses with which he was charged. Reese was acquitted on count nine and convicted on the other counts. Mills was convicted on the conspiracy count; Conley was convicted of conspiracy and of distribution of heroin.

The primary issues raised by Mack and Reese are the same: (1) whether there was sufficient evidence adduced at trial to support the jury's verdict of guilty on the conspiracy counts, and (2) whether the District Court abused its discretion by admitting tape recorded telephone conversations of various coconspirators pursuant to Fed. R.Evid. 801(d)(2)(E). Additionally, appellant Mack asserts that the District Court erred in denying Mack's motion to dismiss because the grand jury acted improperly in indicting him.

## I. Sufficiency of the Evidence

■ When the question on appeal is one of sufficiency of the evidence, our critical inquiry is whether the record evidence can reasonably support a finding of guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979).

■ Mack asserts that there was no evidence linking him with any of his named codefendants. There was, however, evidence that would support a jury finding that he conspired with Antonia Wilford, as well as the unindicted June Hardy. Reese also asserts that there was no evidence linking her with any of her named codefendants. This assertion is also clearly incorrect. There was evidence that would support a jury finding that she conspired with Pauline Conley, as well as the unindicted "Darnell."

■ A more difficult problem, which unfortunately is raised only obliquely in appellant Reese's brief, is whether the government was able to prove one overall conspiracy or two separate conspiracies. This is not a sufficiency of the evidence question, but is instead a problem of variance between indictment and proof. Although the indictment charged the defendants with one conspiracy, the only links shown between the Mack–Wilford group and the Reese–Conley group were the introduction of Agent Adams to Conley by Wilford and the California source of supply for both groups. Thus, it is conceivable that two separate conspiracies existed, one involving Mack and one involving Reese. *See Kotteakos v. United States,* 328 U.S.

750, 769, 66 S.Ct. 1239, 1250, 90 L.Ed. 1557 (1946) (problem is whether one overall agreement bound all of the participants or whether distinct groups of individuals have engaged in "separate adventures of like character").

■ While the evidence supporting one overall conspiracy is thin, we need not decide whether it is legally sufficient to support a jury finding that one conspiracy existed. Even if we assume that two separate conspiracies existed, the proof of separate conspiracies after an indictment charging one conspiracy is not *per se* prejudicial. "Reversal is required only where substantial rights of the appellants are involved." *United States v. Grunsfeld,* 558 F.2d 1231, 1238 (6th Cir.1977). *See also United States v. Grassi,* 616 F.2d 1295, 1302 (5th Cir.), *cert. denied,* 449 U.S. 956, 101 S.Ct. 363, 66 L.Ed.2d 220 (1980).

■ If we "cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error," we must reverse. *Kotteakos,* 328 U.S. at 765, 66 S.Ct. at 1248. In this case, the only prejudice that might have resulted from charging one conspiracy and proving two is attribution by the jury of acts of members of the first conspiracy to members of the second, and vice versa. Usually this problem can be cured with a cautionary instruction to the jury that if it finds multiple conspiracies, evidence relating to one conspiracy cannot be considered in examining a separate conspiracy. *See United States v. Lindsey,* 602 F.2d 785, 787 (7th Cir.1979); *United States v. Jackson,* 696 F.2d 578, 585–86 (8th Cir.1982), *cert. denied,* 460 U.S. 1073, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983); *United States v. Griffin,* 464 F.2d 1352, 1357 (9th Cir.), *cert. denied,* 409 U.S. 1009, 95 S.Ct. 447, 34 L.Ed.2d 302 (1972). However, because no objection was made to the Court's failure to give a multiple conspiracy instruction at trial, we review the omission under the plain error standard. *United States v. Christian,* 786 F.2d 203, 213–14 (6th Cir.1986). In this case, we hold that if a variance existed, it was harmless.

The proof of the acts committed in furtherance of both conspiracies was not likely to confuse the jurors and cause them to transfer guilt from one defendant to another across the line separating the conspiracies. *Compare Kotteakos, supra, with Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). "If the government proves multiple conspiracies and a defendant's involvement in at least one of them, then clearly there is no variance affecting the defendant's substantial rights." *United States v. L'Hoste,* 609 F.2d 796, 801 (5th Cir.), *cert. denied,* 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980).

## II.  Hearsay

■ Both Mack and Reese assert that it was error to allow the introduction of taped telephone conversations prior to proof of conspiracy. This argument is directly controlled by the decision of the Supreme Court in *Bourjaily v. United States,* — U.S. ——, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), which agreed with this Court's prior decision in *United States v. Vinson,* 606 F.2d 149 (6th Cir.1979) on this issue. Courts may conditionally admit hearsay evidence subject to proof by a preponderance of the evidence that a conspiracy exists, and courts may consider the hearsay evidence itself in determining the existence of a conspiracy. *Bourjaily* and *Vinson, supra.*

Even if the District Court should not have found that a single conspiracy existed, the error was not prejudicial. As we note above, there was evidence to support a finding of two separate conspiracies. After a careful review of the record, it is clear that none of the hearsay statements by members of the Mack–Wilford conspiracy implicated Reese or anyone involved in her conspiracy, and none of the hearsay statements by members of the Reese–Conley conspiracy implicated Mack or anyone involved in his conspiracy. Thus, any hearsay evidence erroneously admitted against Mack was harmless, as was any hearsay evidence erroneously admitted against Reese.

### III. Improper Indictment

 Appellant Mack argues that the grand jury indictment was based entirely on hearsay evidence and that the District Court should have conducted an evidentiary hearing to determine whether the grand jury should have indicted him. It has long been established, however, that a defendant may be indicted by a grand jury relying solely on hearsay evidence. *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956).

For the foregoing reasons, the judgment of the District Court is affirmed.