NOT RECOMMENDED FOR PUBLICATION
File Name: 10a0299n.06
No. 07-2410
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**May 13, 2010**

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

         On Appeal from the United States
v.                    District Court for the Eastern
         District of Michigan

**CAMELIA PEATROSS,**

      Defendant-Appellant.

_____

Before:    BATCHELDER, Chief Judge; GIBBONS, Circuit Judge; MALONEY, Chief District Judge.[*]

      PAUL MALONEY, Chief District Judge.

      In July, 2006, the government charged Shawn Gibson, Tanisha Summers, and Camelia Peatross with participating in a conspiracy to defraud the United States. Shawn Gibson ("Gibson") ran a tax return preparation business which, over time, operated under different names. Tanisha Summers ("Summers"), Gibson's girlfriend, served as vice-president of the business beginning in 2004. Defendant-Appellant Camelia Peatross ("Peatross" or "Defendant") began working for Gibson sometime in late 2004. The government alleged that Gibson and Summers would prepare and file false tax returns, inflating the amount owed as a refund. The refund check would be sent

_____

[*]The Honorable Paul L. Maloney, Chief United States District Judge, United States District Court for the Western District of Michigan, sitting by designation.

to an individual bank account of one of Gibson's employees, including Peatross. Only a portion of the refund money, however, would be passed along to the individual whose name was on the return.

In the fall of 2005, Summers left the business and disappeared. Gibson asked Peatross, who had a private investigator's license, to help him find Summers. In early 2006, Carlo Gibson ("Carlo"), Shawn Gibson's nephew who worked for the business, also disappeared, taking copies of some of the fraudulent tax returns with him. Peatross was asked to look for Carlo. While searching for him, Peatross contacted FlagStar Bank in an effort to retrieve the money in Carlo's bank accounts. The government alleged that, in one of her conversations with representatives of FlagStar Bank, Peatross identified herself as an agent of the Internal Revenue Service (IRS) as part of her effort to secure the money in Carlo's account.

Peatross was charged with two crimes in a third superceding indictment: (1) false impersonation of an employee of the United States while demanding money from a bank, a violation of 18 U.S.C. § 912 (Count 2); and (2) conspiracy to defraud the United States of income taxes, a violation of 18 U.S.C. § 371 (Count 48). A jury convicted Peatross on both counts. Peatross appealed the conviction. This court has jurisdiction over the appeal under 28 U.S.C. § 1291.

On appeal, Peatross raises four issues. First, Peatross asserts there was insufficient evidence for the jury to convict her of falsely pretending to be a government agent while demanding money. Second, Peatross claims the evidence introduced at trial established two conspiracies, which created a variance and resulted in prejudice to her. Third, Peatross contends there was insufficient evidence for the jury to convict her of conspiring to defraud the United States. Finally, Peatross argues the district court erred when it denied her motion for a mistrial.

I.      SUFFICIENCY OF THE EVIDENCE (ISSUES 1 AND 3)

When reviewing a criminal case to determine whether the evidence presented was sufficient to support the conviction, the critical inquiry is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Deitz*, 577 F.3d 672, 677 (6th Cir. 2009) (citations omitted) (emphasis in original). In making this determination, this court does not "reweigh the evidence, reevaluate the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Martinez*, 430 F.3d at 317, 330 (6th Cir. 2005) (citing *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993)); *see also United States v. Poole*, 538 F.3d 644, 646 (6th Cir. 2008).

A. FALSELY IMPERSONATING A GOVERNMENT AGENT WHILE DEMANDING MONEY (ISSUE 1)

The false impersonation statute at issue, 18 U.S.C. § 912, criminalizes two distinct offenses. *See United States v. Newman*, 212 F.2d 450, 451 (6th Cir. 1954) (per curiam) (summarizing the charges in an indictment involving one count for the first offense under § 912 and two counts for the second offense under § 912). The statute provides

> Whoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency, or officer thereof, and [1] act as such, or [2] in such pretended character demands or obtains any money, paper, document, or thing of value, shall be fined under this title or imprisoned not more than three years or both.

18 U.S.C. § 912 (2000). To establish a violation of the false impersonation statute, the government must prove that the defendant either (1) falsely impersonated a federal officer coupled with an overt act in conformity with the false impersonation, or (2) falsely impersonated a federal officer coupled with demanding or obtaining a thing of value. *United States v. Rippee*, 961 F.2d 677, 678 (7th Cir. 1992) (citing *United States v. Kimberlin*, 781 F.2d 1247, 1250 (7th Cir. 1985)). Both Defendant and the government describe the three elements necessary to convict for the second offense under the

statute as (1) assuming or pretending to be an officer or employee of the United States, (2) knowing the assumption or pretension to be false, and (3) while so pretending, demanding or obtaining money or a thing of value.

At trial, the government elicited testimony supporting the false impersonation charge from two principal witnesses, FlagStar Bank employees Carrie Curnow ("Curnow") and Bridget Williams ("Williams"). Curnow testified that Defendant came to the bank asking for information about a particular business account. (Trial Tr. 105, June 5, 2007.) Defendant identified herself as "an agent" investigating an account and gave Curnow a business card that identified Defendant as a private detective. (*Id.* at 106-07, 111.) After Defendant admitted she was not a signatory to the account, Curnow told Defendant she would have to get a subpoena in order for the bank to give her any information about the account. (*Id. at* 108.) Williams testified that she spoke on the telephone with Defendant, who asked for bank records of a checking account. (*Id.* at 123-24.) Williams told Defendant she would have to call her back. (*Id.* at 124.) The second telephone call between the two women was monitored by an IRS investigator. (*Id.* at 125.) The telephone conversation was played at the trial. (*Id.* at 126.)

BW:   Okay, this is Bridgette calling from FlagStar Bank.

CP:   Oh, yes.

BW:   Yes.  The last time we spoke, we spoke about you were asking about some deposits into a black box checking account?

CP:   Yes.

BW:   I told you I had to get someone who could help you?

CP:   Uh-huh.

BW: Okay, well I talked to my manager. And with the large amount of tax refunds that are being deposited into these accounts, the only person that we can release the info to is, um, Carlo himself or an IRS agent. And I spoke to —

CP: Well,

BW: I'm sorry?

CP: Go on.

BW: I spoke to Cary at the Dearborn office. And she mentioned that when you came in that you, um, had a badge, and I was just confused as to whether or not you were an agent that I could release this information to.

CP: Yes, I'm a private detective, licensed through State Troopers, Lansing, Michigan.

BW: You're a detective? A state detective?

CP: Licensed. I have a license, uh-huh.

BW: Oh, okay. Okay, well because of the large amounts that are being –

CP: Pardon?

BW: Because of the large amounts, the accounts have been frozen. And we need to get the money to the IRS – returned to the IRS agent.

CP: Well that's what I wanted to do. That's what I was trying to tell, uh, what's her name, Cary when I talked to her.

BW: Okay.

CP: And then I spoke with a Ms. Williams and I was telling, "Do not let him take any money out the account."

BW: Okay.

(CUT OFF)

BW: Hi, Ms. Peatross?

CP: Yeah, I'm on my cell phone with you.

BW: Right, well what we're trying to do right now is get this money returned to the IRS, so we're –

CP: Okay, that's what I want to do, right.

BW: Okay, so can you . . . will you be able to get this money to the IRS were that we make out a cashier's check?

CP: If I what now? Can you make out . . . I'll tell you what. Can you make out . . . you said make out a cashier's check. Make it out to . . . are you gonna make it out for the IRS?

BW: Well, are you working on behalf of the IRS?

CP: Yes I am.

BW: Okay. Now can we –

CP: But you know what? You can make it out to me and then I'll give it to the owner of the company.

BW: Okay.

CP: and let him, uh, uh, go through the IRS, 'cause he has to pay tax on that money.

BW: Okay, now where . . . okay, now where can I send it to?

CP: Pardon?

BW: Where can I send the check to?

CP: Okay. Send the check to, uh, the address 130

BW: Mm-hmm.

CP: 30 Rosemary Boulevard. And that's ? Oak Park, Michigan.

BW: Okay, what's the zip code?

CP: 48237.

BW: Okay. So you're working for the IRS, correct?

CP: Right.

BW:     Okay.  Okay, well I'll get this, um, cashier's check made out.  I'll contact the department so we can cut the check, and then we'll mail it out to Rosemary.

CP:     Okay.  And thanks so much.

BW:     And we make it out to you?

CP:     Right.

BW:     And what's your . . . how do I spell your name?

CP:     First name is spelled CAMELIA.   And the last name is Pe[a]tross, PEATROSS.

BW:     Okay.  And you're an I . . . are you an IRS agent?

CP:     Yes.

BW:     Okay.  All right.  Thank you.

CP:     All right.  And thanks for calling.

BW:     Okay, bye bye.

CP:     Bye bye.

(R. at 357-60.)[1]

Defendant asserts the recorded telephone call does not provide sufficient evidence from which a jury could convict her.  Defendant argues she never demanded money during the conversation, rather, she accepted an offer to send her money.  Additionally, even if she did demand money, she did not do so "in such pretended character" as required by § 912.  Finally, Defendant claims her offer to take the check to the owner of the company so that he could take the money to the IRS is inconsistent with a false representation that she was an IRS agent.

---

[1]Although the tape of the conversation was played for the jury, the conversation is not included in the transcript of the trial.  The transcript appears in the government's brief in opposition to Defendant's motion for judgment of acquittal notwithstanding the verdict, which is included as part of the record on appeal.

Viewing the evidence in the light most favorable to the prosecution, the record contains sufficient evidence to sustain Defendant's conviction. Early in the telephone conversation, Williams tells Defendant she can release the information only to Carlo Gibson or an IRS agent. About halfway through the conversation, Williams asks, for the first time, whether Defendant is working on behalf of the IRS. Defendant responds, "Yes I am." Later in the conversation, Defendant is asked whether she is an IRS agent, to which she replies, "yes." These responses establish the first element, pretending to be an agent of the IRS. Defendant must concede the second element; she knew she was not an IRS agent. Immediately after Defendant's first affirmative response, Williams begins to ask a question when she is cut off by Defendant, who states "you can make [the check] out to me and then I'll give it to the owner of the company." This directive, following Defendant's false affirmation that she was working on behalf of the IRS, establishes the third element, the demand for money. Defendant also provided her address and the spelling of her name, so that the bank could send the check to her directly. The statute does not require that a defendant actually receives money or a thing of value when a demand is made; the statute uses the disjunctive "or" between the words "demand" and "obtain." Based on these statements, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. at 307, 319 (1979).

Defendant's authority, *United States v. York*, 202 F. Supp. 275 (E.D.Va. 1962), does not compel a different conclusion. Citing *York*, Defendant asserts, when the pretension is unrelated to the demand for a thing of value, there is no violation of the statute. In *York*, the defendant, a young woman, had applied for a job with the Federal Bureau of Investigation (FBI) as a secretary. While visiting the "big city" and shopping for a dress, the defendant asked to purchase a second dress on credit and filled out an application card. In the space for "occupation," the defendant indicated she

had been working for the FBI for one and a half years at the area office. The shop discovered the misrepresentation when the defendant failed to pay her bill, and the shop called the area FBI office. The court concluded the defendant did not pretend to be a federal employee acting under the authority of the government. *Id.* at 276. She was "acting on her own because like most women she wanted another dress and she did not pretend to be buying the dress for the United States or in any way authorized by the United States to but [sic] the dress." *Id.* at 277. The court also concluded the defendant did not obtain the dress "in such pretend character." *Id.* "She did not ask the credit manager for credit because she was an employee of the F.B.I. and she was in no sense acting in the pretend character of an employee of the F.B.I." *Id.* The facts involved in this case and in *York* are substantially different. Defendant's representation that she worked for the IRS was not a misrepresentation unrelated to her request that the funds be released to her. Defendant relied on her false status *as an IRS agent*. But for her association with the IRS, the bank would not release the funds to her. In contrast, York did not rely on her false status as an employee *of the FBI* to secure the loan; she relied on her false status *as an employee* to secure the loan.

B. CONSPIRACY TO DEFRAUD THE UNITED STATES (ISSUE 3)

In Count 48 of the third superceding indictment, Defendant was charged with participating in a conspiracy to defraud the United States, a violation of 18 U.S.C. § 371.

> Under 18 U.S.C. § 371, it is illegal for "two or more persons [to] conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or purpose." To prove conspiracy, the government must establish: (1) the existence of an agreement to violate the law; (2) knowledge and intent to join the conspiracy; and (3) an overt act constituting actual participation in the conspiracy. "A tacit or material understanding among the parties to a conspiracy is sufficient to establish the agreement [, and] conspiracy may be inferred from circumstantial evidence which may reasonably be interpreted as participation in a common plan."

*United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007) (citations omitted) (alterations in original); *see United States v. Douglas*, 398 F.3d 407, 413 (6th Cir. 2005) ("The elements of a section 371 conspiracy to defraud are: (1) an agreement to accomplish an illegal objective against the United States; (2) one or more overt acts in furtherance of the illegal purpose; and (3) the intent to commit the substantive offense, i.e., to defraud the United States."). "[A] defendant's knowledge of and participation in a conspiracy also may be inferred from [her] conduct and established by circumstantial evidence. Once a conspiracy is established beyond a reasonable doubt, a particular defendant's connection to the conspiracy 'need only be slight.'" *United States v. Conatser*, 514 F.3d 508, 518 (6th Cir.), *cert. denied* 129 S.Ct. 450 (2008) (citations omitted) (alterations added).

Defendant argues that the second element of a conspiracy, the knowledge of the conspiracy, was not established by the evidence presented at trial. She does not dispute that there is sufficient evidence to find the other two elements of the crime.

Viewing the evidence in the light most favorable to the government, sufficient evidence was produced at trial from which a rational trier of fact could have found Defendant guilty beyond a reasonable doubt of conspiracy to defraud the United States. The evidence against Defendant is largely circumstantial, but it is sufficient to uphold her conviction. Carlo Gibson testified that he saw Defendant preparing tax returns at the office. (Trial Tr. 152-54, June 5, 2007.) Carlo testified Defendant opened a bank account for the purpose of receiving tax refunds in her name and that she actually received tax refunds. (*Id.* at 155-56.) Individuals testified that Defendant provided them with cashier's checks for their tax returns drawn on accounts held by Defendant. (Trial Tr. 35, 107, June 11, 2007.) The amounts on the cashier's checks were less than the amounts deposited in Defendant's accounts by the government, based on the tax returns submitted to the IRS. (*Id.* at 37-38, 109.) Because Defendant has not challenged the existence of the conspiracy, the evidence

establishing her knowledge of the conspiracy and her participation in that conspiracy need only be slight. *See Conatser*, 514 F.3d at 518. To overturn Defendant's conviction, this court would have to discount the testimony offered by these witnesses. On appeal, however, this court neither reweighs evidence nor reevaluates the credibility of witnesses. *See Martinez*, 430 F.3d at 330; *Poole*, 538 F.3d at 646.

## II. VARIANCE FROM THE INDICTMENT (ISSUE 2)

When determining whether a variance from the indictment occurred at trial, this court performs a *de novo* review. *United States v. Warman*, 578 F.3d 320, 341 (6th Cir. 2009) (citing *United States v. Swafford*, 512 F.3d 833, 841 (6th Cir. 2008)).

In order to reverse a conviction because of a variance between the indictment and the evidence produced at trial, the defendant must establish (1) the existence of a variance and (2) that the variance affected some substantial right. *Id.* (citing *Hughes*, 505 F.3d at 587); *United States v. Osborne*, 545 F.3d 440, 443 (6th Cir. 2008) (quoting *United States v. Prince*, 214 F.3d 740, 757 (6th Cir. 2000)). A variance occurs when the evidence presented at trial proves facts materially different from the facts alleged in the indictment. *Hughes*, 505 F.3d at 587 (quoting *United States v. Chilingirian*, 280 F.3d 704, 711 (6th Cir. 2002)). The variance affects some substantial right when the defendant establishes the variance prejudiced the ability to defend himself or herself or prejudiced the overall fairness of the trial. *Id.* (citing *United States v. Manning*, 142 F.3d 336, 339 (6th Cir. 1998)). "Within the context of a conspiracy, a variance constitutes reversible error only if a defendant demonstrates that [she] was prejudiced by the variance and the 'indictment allege[d] one conspiracy, but the evidence can reasonably be construed *only* as supporting a finding of multiple conspiracies.'" *United States v. Robinson*, 547 F.3d at 632, 642 (6th Cir. 2008) (citation omitted).

"In making this determination, the evidence must be viewed in a light most favorable to the government." *Id.* (citation omitted).

This court first examines the record to determine "whether the evidence can 'reasonably be construed only as supporting a finding of multiple conspiracies' rather than the single conspiracy alleged in the indictment." *Hughes*, 505 F.3d at 587 (quoting *United States v. Warner*, 690 F.2d 545, 548) (6th Cir. 1982) (citing *Kotteakos v. United States*, 328 U.S. 750 (1946))). "The principal considerations to determine the number of conspiracies are the existence of a common goal, the nature of the scheme, and the overlapping of the participants in various dealings." *Warman*, 578 F.3d at 341-42 (quoting *United States v. Smith*, 320 F.3d 647, 652 (6th Cir. 2003)). "Whether single or multiple conspiracies have been established is usually a question of fact to be resolved by the jury . . . and [is] to be considered on appeal in the light most favorable to the government." *Id*. (citations omitted) (alterations in original).

Second, the court must determine whether the variance "substantially influences the outcome of the trial." *Osborne*, 545 F.3d at 443 (citations omitted). Variances pose a danger to defendants because of the risk of guilt transference from defendants involved in one conspiracy to defendants involved in another conspiracy. *United States v. Caver*, 470 F.3d 220, 237 (6th Cir. 2006) (citing *Kotteakos*, 328 U.S. at 774); *see also United States v. Blackwell*, 459 F.3d 739, 762 (6th Cir. 2006) ("The inquiry into whether a variance constitutes reversible error focuses on whether a danger exists that the defendant was convicted based on evidence of a conspiracy in which the defendant did not participate.") (citing *United States v. Mack*, 837 F.2d 254, 258 (6th Cir. 1988)). Ordinarily, the danger of prejudice can be cured by a cautionary instruction to the jury. *Hughes*, 505 F.3d at 587. Where a significant amount of evidence unrelated to the defendant is introduced at trial, the court must consider several factors to determine if the variance was prejudicial: (1) the number of

conspiracies the evidence establishes, (2) the number of non-conspiratorial co-defendants tried with defendant, and (3) the size of the conspiracy alleged in the indictment. *Id.* at 587-88 (quoting *Blackwell*, 459 F.3d at 762).

The indictment alleged a single conspiracy to defraud the IRS by Defendant, Shawn Gibson, and Tanisha Summers. Defendant asserts the government produced evidence that she participated in a conspiracy to defraud and embezzle money from the individuals for whom tax forms were prepared and submitted to the IRS. Defendant argues the government elicited testimony from at least twelve individuals who stated they did not receive the full amount of the refund issued by the IRS. Defendant contends no cautionary instruction to the jury was provided.

Viewing the evidence presented at trial in a light favorable to the prosecution, Defendant is not entitled to a reversal of her conviction on the basis of a variance.

> "To prove a single conspiracy, the government need only show that each alleged conspirator had knowledge of and agreed to participate in what he knew to be a collective venture directed toward a common goal." "[A] single conspiracy does not become multiple conspiracies simply because each member of the conspiracy did not know every other member, or because each member did not know of or become involved in all of the activities in furtherance of the conspiracy."

*Robinson*, 547 F.3d at 642 (citations omitted). The evidence presented did not create a variance from the one alleged in the indictment. At trial, Carlo Gibson testified Defendant worked for Shawn Gibson. (Trial Tr. 151-52, June 5, 2007.) The third superceding indictment alleged the same. (R. at 104.) Several witnesses testified their tax refunds were deposited into Defendant's bank account. (Trial Tr. 22-24, June 7, 2007; Trial Tr. 19-20, June 11, 2007.) The indictment alleged the tax refunds would be electronically transferred into bank accounts held by members of the conspiracy. (R. 105.) Defendant disbursed, as tax refunds, some of the money deposited in her accounts by the government to the individuals whose returns had been prepared by members of the conspiracy.

(Trial Tr. 37-38, 109, June 11, 2007.)  The third superceding indictment alleged the same.  (R. at 105.)  The evidence presented at trial mirrors the facts alleged in the indictment.

Defendant's assertion that the evidence presented supports the finding of a second conspiracy suffers multiple fatal flaws.  First, the facts supporting the conspiracy alleged in the indictment and the facts supporting the second conspiracy alleged by Defendant are identical.  Defendant cannot claim she was surprised by the evidence presented.  According to Defendant's theory, the uncharged conspiracy to defraud clients was accomplished by filing tax returns and then not turning over all of the proceeds to the clients.  The similarity between the conspiracy alleged in the indictment and the second conspiracy alleged by Defendant undermines the conclusion that multiple conspiracies occurred: the goal of the two alleged conspiracies were the same, the nature of the schemes was identical, and the participants in the two conspiracies overlapped.  *See Warman*, 578 F.3d at 341-42.  Second, Defendant has not established that the evidence presented can reasonably be construed *only* as supporting a finding that two conspiracies occurred.  *See Robinson*, 547 F.3d at 642.  Defendant insists the evidence *may* support the conclusion that two conspiracies occurred.  That is not the standard this court applies when reviewing the evidence for a variance.  Defendant must prove the evidence *must* support the conclusion that two conspiracies occurred.  Defendant must overcome the deference afforded to the jury's fact finding role.  This court must review the evidence in the light most favorable to the government.  With those two constraints, combined with the overlapping evidence explained above, Defendant's assertion that the evidence may support a finding of more than one conspiracy fails.

Even if a variance was created, Defendant cannot establish any prejudice.  First, contrary to Defendant's assertion, the jury was given a cautionary instruction.  The instructions given clearly identify the conspiracy as one to defraud the United States. (Trial Tr. 122, June 19, 2007.)  The jury

was instructed that the indictment alleged Defendant participated in a single conspiracy, and that if the government failed to establish that Defendant was a member of the conspiracy charged in the indictment, the jury must find her not guilty. (*Id.* at 125-26.) The instructions further cautioned the jury that "proof that a defendant was a member of some other conspiracy is not enough to convict." (*Id.* at 126.) Second, where the evidence supporting two conspiracies substantially overlaps, a defendant is not prejudiced when only one of the conspiracies is charged in the indictment. A variance will not be considered material "'where the allegation and proof substantially correspond, or where the variance was not of a character which could have misled the defendant at trial' and where it did not 'deprive the accused of [her] right to be protected against another prosecution for the same offense.'" *Hughes*, 505 F.3d at 589 (quoting *Berger v. United States*, 295 U.S. 78, 83 (1935)).

The facts in Defendant's case are similar to the facts in *Berger* and *Osborne*. In *Berger*, eight defendants were charged with a single counterfeiting conspiracy, among other charges. The object of the counterfeiting operation was not alleged in the indictment. At trial, the evidence presented established two conspiracies. *Berger*, 295 U.S. at 82-83. The object of the first conspiracy, involving two defendants, was to use the counterfeit notes to purchase rings. The object of the second conspiracy, involving three defendants, was to pass the counterfeit notes to tradesmen. The court found the variance harmless because the allegations in the indictment and the proof at trial substantially corresponded and the variance did not mislead the defendant. *Id.* at 83. In *Osborne*, the indictment alleged a single mail fraud conspiracy against three defendants. The evidence presented showed Osborne and the other two defendants defrauded the Fruit of the Loom company by submitting false invoices from a modeling agency. The evidence also showed the two defendants other than Osborne conspired to defraud the Fruit of the Loom company through another agency

created for that same purpose. The court found that, even if a variance was created, Osborne could not establish sufficient prejudice to reverse his conviction. *Osborne*, 545 F.3d at 443-44. The court held the jury was appropriately instructed on the conspiracy allegation. *Id.* at 443. The court found little chance of guilt transference because the case involved only three defendants and two conspiracies, all three individuals were charged with similarly culpable conduct, and the witnesses were careful to specify how they interacted with each individual defendant. *Id.* at 444.

The limited nature of the conspiracy in this case distinguishes it from the facts in *Kotteakos*. The Supreme Court found the variance was sufficiently prejudicial to require reversal in *Kotteakos*. There, the indictment named thirty-two defendants and charged them with a conspiracy to defraud financial institutions. The three appellants were convicted, along with four others, by a jury. On appeal, the government admitted the evidence established not one, but eight or more conspiracies, all revolving around one central figure. The Court distinguished *Berger* because of the difference between the number of defendants and the number of conspiracies. *Kotteakos*, 328 U.S. at 766-67, 772. The Court explained, when the proofs include more charges and more people with varying degrees of participation, the possibility for a miscarriage of justice increases. *Id.* at 776.

III.     MOTION FOR A MISTRIAL (ISSUE 4)

Peatross moved for a mistrial in response to the government's impeachment of Bertha Gibson ("Ms. Gibson"). On cross examination, the government questioned Ms. Gibson about two prior convictions for forgery and fraudulent use of a credit card. Peatross made no objection at the time, but later moved for a mistrial. Ms. Gibson claimed that admission of the impeachment evidence was improper, as she was not provided the notice required by Fed. R. Evid. 609(b). The district court asked Peatross if she wanted a curative instruction to the jury and, after Peatross declined, the district court denied the motion for mistrial.

A. STANDARD OF REVIEW

This court reviews the denial of a motion for a mistrial for abuse of discretion. *Caver*, 470 F.3d at 243 (citing *Martinez*, 430 F.3d at 336); *United States v. Blakeney*, 942 F.2d 1001, 1030 (6th Cir. 1991) (quoting *United States v. Levy*, 904 F.2d 1026, 1030 (6th Cir. 1990)). "The primary concern in ruling upon a motion for a mistrial is a determination of the fairness to the accused." *Id.* (citing *United States v. Atisha*, 804 F.2d 920, 926-927 (6th Cir. 1986)); *see also Caver*, 470 F.3d at 243 (same) (citing *United States v. Forrest*, 17 F.3d 916, 919 (6th Cir. 1994)). In order to find the lower court abused its discretion, the reviewing court must have a definite and firm conviction that the trial court committed a clear error of judgment. *Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624, 634 (6th Cir. 2009) (quoting *Berger v. City of Mayfield Heights*, 265 F.3d 399, 402 (6th Cir. 2001)). A clear error of judgment occurs when the lower court "relies upon clearly erroneous factual findings, applies the law improperly, or uses an erroneous legal standard." *Id.* (quoting *Wikol ex rel. Wikol v. Birmingham Pub. Sch. Bd. of Educ.*, 360 F.3d 604, 611 (6th Cir. 2004)); *see also Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2007), *cert. denied*, 129 S.Ct. 35 (2008) ("A district court abuses its discretion only when we are 'left with a firm and definite conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors or where the trial court improperly applies the law or uses an erroneous legal standard'") (quoting *Paschal v. FlagStar Bank*, 295 F.3d 565, 576 (6th Cir. 2002)).

Generally, we review a district court's admission or exclusion of evidence for an abuse of discretion. *United States v. Davis*, 514 F.3d 596, 611 (6th Cir.), *cert. denied*, 129 S.Ct. 57 (2008). A decision to admit evidence under Fed. R. Evid. 609(a)(1) is reviewed for abuse of discretion, while a decision to admit evidence under Fed. R. Evid. 609(a)(2) is reviewed for plain error. *United States*

*v. Morrow*, 977 F.2d 222, 228 (6th Cir. 1992) (*en banc*). Where, as here, a party fails to object to the admission of evidence at trial, this court reviews the admission of the evidence under the plain error standard. *United States v. Stephens*, 549 F.3d 459, 464 (6th Cir. 2008) (citing *United States v. Cowart*, 90 F.3d 154, 157 (6th Cir. 1996)). To establish a plain error, the appellant must establish (1) an error occurred that was (2) obvious and clear, (3) affected the defendant's substantial rights, and (4) affected the fairness, integrity or public reputation of the judicial proceedings. *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir.) (*en banc*), *cert. denied*, 129 S.Ct. 68 (2008) (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)). "'[O]nly in exceptional circumstances' will we find such error - only, we have said, 'where the error is so plain that the trial judge . . . [was] derelict in countenancing it.'" *Id.* (quoting *Gardiner*) (alterations in original).

B. ANALYSIS

Evidence that a witness has been convicted of a crime involving dishonesty or false statements, regardless of the punishment, shall be admitted for impeachment purposes, without any balancing test. Fed. R. Evid. 609(a)(2); *United States v. Arhebamen*, 197 F.App'x 461, 466 (6th Cir.), *cert. denied*, 549 U.S. 1045 (2006). Rule 609(a) is a rule of inclusion, not a rule of exclusion. *United States v. Sloman*, 909 F.2d 176, 180 (6th Cir. 1990).

Rule 609(b) limits, for the purpose of impeachment, the admissibility of evidence of prior convictions that occurred more than ten years in the past. When the date of conviction, or the date upon which the witness was released from confinement, whichever is later, is more than ten years old, the trial court must determine whether the probative value of the evidence substantially outweighs its prejudicial effects. Fed. R. Evid. 609(b); *United States v. Sims*, 588 F.2d 1145, 1149 (6th Cir. 1978) (quoting *United States v. Mahler*, 579 F.2d 730, 734 (2d Cir. 1978)). "Rule 609(b) creates, in effect, a rebuttable presumption that convictions over ten years old are more prejudicial

than helpful and should be excluded." *Sims,* 588 F.2d at 1150 (citing *United States v. Johnson*, 542 F.2d 230, 234 (5th Cir. 1976)). After reviewing the legislative history of Rule 609(b), this court held evidence of convictions more than ten years old should be admitted "very rarely and only in exceptional circumstances." *Sloman*, 909 F.2d at 181 (quoting *Sims*, 588 F.2d at 1147)). Before admitting evidence of convictions more than ten years old, a court should conduct a hearing on the matter. *Sims*, 588 F.2d at 1149. When making its decision, the court should consider (1) the impeachment value of the prior crime, (2) the point in time of the conviction and the witness's subsequent history, (3) the similarity between the earlier crime and the charged offense, (4) the importance of the defendants' testimony, and (5) the centrality of the credibility issue. *Id.* (citing *Gordon v. United States*, 383 F.2d 936, 940 (D.C.Cir. 1967)).

We have not interpreted Rule 609(b) for the purpose of determining when a witness has been released from confinement. We have commented, without being asked to decide the issue, that evidence of a prior conviction is admissible so long as less than ten years have passed since the witness was release from confinement, "or the period of his parole or probation had expired." *United States v. Gaines*, 105 F.App'x 682, 695 (6th Cir. 2004), *vacated on other grounds*, *Gaines v. United States*, 543 U.S. 1114 (2005). In contrast, other circuits, who have considered the question of what constitutes confinement for the purpose of Rule 609(b), have ruled that confinement does not include time on probation. *See United States v. Rogers*, 542 F.3d 197, 201 (7th Cir. 2008) ("we hold that 'confinement' for the purposes of the ten-year time limit in Rule 609(b) does not include periods of probation or parole"); *United States v. Broncho*, 62 F.3d 1425 (9th Cir. 1995) (unpublished table opinion); *United States v. Daniel*, 957 F.2d 162, 168 (5th Cir. 1992). In *Daniel*, a witness for the defense was convicted ten years and four days prior to his testimony. *Daniel*, 957 F.2d at 168. The witness was sentenced to three years probation. *Id.* The court held the witness's

parole was not included in the calculation of time for the purposes of Rule 609. *Id.* The court relied on the change in the text of Rule 609 in 1972, which prior to the amendment provided that the ten year period runs from "the expiration of the period of his parole, probation, or sentence." *Id.*

Bertha Gibson, Carlo Gibson's mother and Shawn Gibson's sister, testified for the defense. The government concluded its cross examination with three questions about Ms. Gibson's criminal history. The government did not provide notice of its intent to impeach Ms. Gibson with her prior convictions. The government separately asked if she had ever been convicted of forgery, fraudulent use of a credit card, or mail fraud. (Trial Tr. 31, June 18, 2007.) Ms. Gibson answered "yes" to each question. (*Id.*) Defendant did not object to the questions. The next day, after the close of evidence and before the jury was given the instructions, Defendant orally moved for a mistrial on the basis of the government's questions concerning Ms. Gibson's criminal history. The court offered to give a curative instruction to the jury, which Defendant declined because she did not want the testimony highlighted. The government asserted the convictions were within the past ten years and, at the court's request, agreed to provide information attesting to that fact.

On June 26, 2007, Defendant filed a motion for a mistrial. As part of the government's response, it attached pages 8, 10 and 12 of a facsimile, a document containing Ms. Gibson's criminal history. (R. at 340-42.) Page 10 of the facsimile indicates Ms. Gibson was charged with fraudulent use of a credit card and forgery. (R. at 341.) Under the charge for fraudulent use, the document states "Disposition (Unknown 1996-07-23; $100 F & 3 YRS PROB CC)." (*Id.*) Under the forgery charge, the document states "Disposition (Unknown 1996-07-23; $100 F & 3 YRS PROB)." (*Id.*) Page 12 of the facsimile indicates Ms. Gibson was arrested on May 24, 1977 and charged with mail fraud. (R. at 342.) The arresting agency was the "METRO CORR CTR MALE CHICAGO." (*Id.*)

Under the mail fraud charge, the document states "Disposition (Unknown 1996-07-23; 1 YR SENT)." (*Id.*)

The district judge addressed Defendant's motion for mistrial at the sentencing hearing, prior to imposing sentence. After hearing argument on the motion, the court heard testimony from Ms. Tracy Kosmas, a United States Probation Officer. The court then provided its reasons for denying the motion for a mistrial. The court noted the date on the facsimile was June 14, 2007, four days before Ms. Gibson testified. (Sentencing Tr. 36, Nov. 1, 2007.) Based on Kosmas' testimony, the court found it could reasonably rely on the dates of conviction and sentence contained in the facsimile. (*Id.* at 37.) The court found one conviction fell within the ten year time frame under Rule 609, because the conviction included a one year sentence. (*Id.* at 38.) The court conceded the documentation was vague and there was "some fogginess on this from which the Court could make a determination about whether or not they should have been - - could not make a determination based on clear facts about whether they should have been admitted." (*Id.* at 39.)

The court next addressed whether the information, the fact of the convictions, caused prejudice to Defendant. Balancing the beneficial testimony from Ms. Gibson against the weight of the evidence against Defendant, the court concluded "the information elicited from Ms. Bertha Gibson is not sufficient to grant a mistrial relative to that count of conspiracy." (*Id.* at 45.) Turning to the charge of impersonating an agent, the court found there were other witnesses who testified that Defendant was asked to work as a private investigator and therefore any harm arising from the impeachment of Ms. Gibson was minimal. (*Id*. at 45-46.) The court further reasoned that any harm Defendant suffered from the impeachment of Ms. Gibson was no greater than the harm arising from Ms. Gibson's relationship with Shawn and Carlo, individuals the jury was told were involved in

suspicious or wrongful activity. (*Id.* at 46.) The court concluded, even if it had found that the convictions should not have been admitted, any harm was insufficient to grant a mistrial:

> the harm to Ms. Peatross in the scheme of all the other evidence in the case and the showing of bias by those offenses compared to any showing of bias that might have occurred because she is either the friend of Ms. Peatross or the sister of Shawn Gibson or the mother of Carlo Gibson, I think, probably evens everything out. And therefore, I don't think there is sufficient harm that the Court should grant a mistrial, and your motion for a mistrial is denied.

(*Id.* at 47.)

Defendant phrases the question presented in a manner that appeals the district court's decision to deny the motion for mistrial. The substance of Defendant's argument, however, presents the issue as an abuse of discretion to admit the evidence of impeachment. If the issue before the court addresses the decision to deny the motion for a mistrial, the issue is reviewed under the abuse of discretion standard. If the issue before the court addresses the admissibility of Ms. Gibson's criminal history, the issue is reviewed under the plain error standard. Defendant argues the government's lack of notice of intent to impeach deprived her of the ability to argue that impeachment was improper and then to elect whether to put Ms. Gibson on the stand. Defendant contends, because the district court failed to determine when the convictions occurred and failed to balance the probative and prejudicial effects of the convictions, the district court abused its discretion in allowing the jury to hear about Ms. Gibson's convictions. Defendant asserts the evidence of her guilt was not so overwhelming as to render the district court's error harmless.

This court must first determine whether the evidence at issue was improperly admitted. Implied in the determination of whether a court abused its discretion in denying a motion for a mistrial on the basis of improper testimony is, obviously, that the evidence at issue was somehow improper. *See McMillan v. Castro*, 405 F.3d 405, 410 (6th Cir. 2005) (holding, in an appeal of the

denial of a motion for a mistrial on the basis of judicial misconduct, that the threshold question was whether the district court's conduct fell within the acceptable range or whether it evidenced hostility or bias to the appealing party). If the district court did not err in admitting the evidence, then the district court could not have abused its discretion in denying the motion for a mistrial.

The district court did not err in denying the motion for a mistrial. The documentary evidence of Ms. Gibson's criminal record is not a model of clarity. Defendant, however, has not offered any documentary evidence contradicting the district court's conclusion that Ms. Gibson was convicted in July 1996 for crimes with which she was charged in 1977.[2] At least one of those convictions, the mail fraud charge, carried a sentence of one year. It follows then that Ms. Gibson's mail fraud sentence ended less than ten years prior to the day on which she testified.[3] Accordingly, the evidence for the mail fraud conviction was admissible under Rule 609(a)(2).

The admission of the evidence of Ms. Gibson's forgery and fraudulent use of a credit card convictions is reviewed for plain error, rather than for an abuse of discretion, because Defendant did not object to the questions posed by the government during cross examination. *See Stephens*, 549 F.3d at 464. Defendant has not established any error that occurred was obvious and clear. The district court did not determine whether the evidence of these two convictions was properly admitted. Instead, the district court determined, if the evidence was not properly admitted, the error was harmless. On the assumption that the evidence was not properly admitted, Defendant has not

---

[2]At sentencing, the district court acknowledged receiving a letter from Ms. Gibson in which she asserted the sentences for the crimes were imposed in 1977. (Sentencing Tr. 37-38.) The letter was not docketed by the district court and is not part of the record on appeal.

[3]Bertha Gibson testified on June 18, 2007. (Trial Tr. 23, June 18, 2007.) Using the July 23, 1996, date on the facsimile for the conviction and adding one year for the sentence, Defendant's confinement ended on July 23, 1997, roughly nine years and eleven months before the date of her testimony.

established the admission of the evidence affected her substantial rights. *But see Gaines*, 105 F.App'x at 695. Defendant has not demonstrated that the admission of the evidence affected the fairness, integrity or public reputation of the proceedings. The district court carefully evaluated the testimony offered by Ms. Gibson and considered how her testimony benefitted Defendant. The court concluded most of what she testified to was covered by other witnesses who had not been impeached. Defendant has not established the sort of exceptional circumstances requiring reversal. *See Vonner*, 516 F.3d at 386.

IV.     CONCLUSION

For the reasons provided above, Defendant's convictions are **AFFIRMED.** The evidence presented at trial was sufficient to support both of Defendant's convictions. Defendant has not established that the evidence presented at trial can reasonably be construed *only* as supporting a finding of multiple conspiracies, so Defendant has not shown that the evidence created a variance. Neither has Defendant established any error in the admission of the prior convictions of one of her witnesses or the district court's decision to deny her motion for a mistrial.