**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

____________

No. 19-1278

____________

UNITED STATES OF AMERICA

v.

KEITH THOMAS,

Appellant

________________________________________

On Appeal from the United States District Court for the
Western District of Pennsylvania
(District Court No.: 2-15-cr-00256)
District Court Judge: Honorable Cathy Bissoon

________________________________________

Submitted under Third Circuit LAR 34.1(a)
on April 22, 2020

(Opinion filed: June 10, 2020)

Before: HARDIMAN, RENDELL and FISHER, Circuit Judges

## O P I N I O N[*]

**RENDELL**, *Circuit Judge*:

Keith Thomas appeals his conviction of conspiracy to possess with intent to distribute and distribute cocaine and possession with intent to distribute a substance containing cocaine. He challenges the District Court's denial of his motion to suppress, the exclusion of evidence of his prior drug use, and the admission of prior convictions that he argues were more than ten years old. Because we find that none of these issues warrant reversal, we will affirm.

### I. Background

In 2015, the FBI's Safe Streets Task Force was investigating cocaine trafficking in and around Pittsburgh under the leadership of Special Agent John Orlando. The Task Force became aware of Appellant Keith Thomas through their investigation into distributor Semori Wilson, which involved extensive surveillance as well as wiretaps. On October 16, 2015, Task Force officers watched Wilson meet up with his cocaine source, Domin Guerrero-Guerrero, at an IHOP, and switch cars. Wilson drove Guerrero-Guerrero's car to Appellant Thomas's house less than 15 minutes later and stayed for a few minutes. Later that evening, Wilson drove Guerrero-Guerrero's car to the hotel where Guerrero-Guerrero

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

was staying and where Guerrero-Guerrero had recently returned in Wilson's vehicle. Wilson parked, removed a bag from the back seat, and entered the hotel.

On October 23, 2015, Wilson called Thomas and said that he needed to talk with him as soon as possible. When Thomas asked what it was about, Wilson said "Bro do we do that?" Supp. App. 337. Later, Wilson told Thomas in a text message that he wanted to see him about "that Mercedes," a term Agent Orlando and Thomas both testified referred to high-quality cocaine. App. 406, 540-41; Supp. App. 338. Thomas agreed to meet at Wilson's home in the early hours of October 24. Surveillance camera footage outside Wilson's home showed Thomas arrive, exit his vehicle, interact with Wilson briefly, and then drive away.

On October 27, 2015, Thomas called Wilson and said he did not like one of the "two logos" Wilson had sold him. Supp. App. 341. Thomas explained that "some of it isn't blockin all the way back up." App. 254-55; Supp. App. 342. Agent Orlando understood this to mean that Thomas was dissatisfied with cocaine Wilson sold him because it was not finishing "in a block fashion" when he tried to cook it into crack. App. 408. Thomas later confirmed the accuracy of this interpretation. Wilson said he would call the person who sold him the cocaine to find a way to rectify the situation. On October 29, Thomas called Wilson to remind him. When Wilson said he was forty minutes away, Thomas told him to be sure to get in touch "cause this dude keep on callin me." Supp. App. 347. The two eventually met at Wilson's house two days later, as confirmed by surveillance, but Wilson had "[n]o [a]nswer yet" regarding the problematic cocaine. App. 160-61; Supp. App. 363.

On November 1, Thomas again texted Wilson, asking him to "[c]all me asap." Supp. App. 366. Conversations between Wilson and another distributor revealed to investigators that the men were receiving many similar complaints about the cocaine, making it difficult to sell. Later on November 1, Wilson texted Thomas to ask whether he was still having problems. Thomas replied that he was "doing it now" and would know in two minutes. Supp. App. 368. Wilson said not to "go big just in case." *Id.* Agent Orlando understood this exchange to mean Thomas was attempting to cook the cocaine Wilson sold him into crack, and Wilson was warning Thomas not to cook all of it so that he could refund or exchange the rest if it was problematic. Thomas corroborated this interpretation.

On November 2, Wilson spoke with Guerrero-Guerrero about the cocaine. Wilson said that Guerrero-Guerrero had sold him the "Mercedes" cocaine and "the can"—a term for low-quality cocaine—with which customers were having problems. App. 411. The next day, Wilson called Thomas to set up a meeting. When Thomas asked why, Wilson asked if he had amnesia and said he wanted to "grab that" from Thomas. Supp. App. 369. The two arranged an in-person meeting. From this exchange, Agent Orlando inferred that Wilson was going to receive a new shipment of cocaine from which he could resupply Thomas and that he wanted to gather and return the inferior cocaine.

This prompted Agent Orlando to obtain several search warrants, including a warrant to search Thomas's residence. Task Force officers searched Thomas's residence on November 3, 2015. They recovered multiple grams of both powder and crack cocaine, a cutting agent, and mixing paraphernalia covered in cocaine residue and Thomas's fingerprints.

In December 2015, Thomas was indicted for conspiracy to possess with intent to distribute and distribute cocaine under 21 U.S.C. § 846 as well as one count of possession with intent to distribute a substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(b)(1)(C). Thomas filed a motion to suppress the evidence found in his house, arguing that Agent Orlando's affidavit did not set forth probable cause. The District Court held a hearing on July 20, 2018 and denied the motion.

The District Court also addressed several evidentiary issues. Thomas's counsel moved to introduce evidence of Thomas's prior drug use to show that he was addicted to cocaine and possessed cocaine only for personal use, but the government objected. The District Court denied that motion on August 10. At the same August pretrial hearing, the government argued that, should he testify, Thomas's entire prior criminal record would be admissible. Thomas argued in opposition that certain convictions were more than ten years old, and their probative value did not substantially outweigh the risk of prejudice under Federal Rule of Evidence 609. The District Court found that all the offenses fell within the ten-year period but reserved its ruling until Thomas decided whether to testify. Thomas filed a motion for reconsideration, and the Court held that, regardless of how the ten-year period was calculated, the entire criminal record would be admitted.

Thomas was tried along with one co-defendant, Damien Gibson, in August 2018. The evidence produced at trial showed the foregoing facts, relying heavily on surveillance footage, recorded calls, and text messages. Agent Orlando and Pennsylvania State Police Trooper Michael Warfield testified to interpret some of the language in the text messages

and calls. Thomas also testified on his own behalf and was impeached with his prior convictions. On August 27, 2018, the jury convicted Thomas on both counts.

## II. Discussion

On appeal, Thomas raises three issues. Thomas challenges the District Court's denial of his motion to suppress evidence obtained pursuant to a search warrant he claims was deficient. Next, he argues the District Court erred in prohibiting him from introducing evidence of prior drug use to support his defense that the drugs in his home were for personal use. Finally, Thomas contends the Court erred in allowing the government to impeach him with prior criminal convictions that he argues fell outside the ten years considered under Federal Rule of Evidence 609. We address each argument in turn.

### *A. Denial of Motion to Suppress*

Thomas contends that the District Court erred in denying his motion to suppress because the affidavit in support of the search warrant did not demonstrate probable cause. We apply plenary review to the District Court's assessment of the magistrate judge's probable cause determination. *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010). We therefore must review whether the magistrate who issued the search warrant "had a substantial basis for concluding that probable cause existed." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)). In assessing probable cause, a magistrate must determine whether, based on the facts set forth in the affidavit, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quoting *Gates*, 462 U.S. at 238); *id.* at 559.

The affidavit here offered more than a substantial basis for the magistrate judge to find a fair probability that contraband would be found in Thomas's house. The affidavit specified that the address was Thomas's residence and that Thomas was a suspected cocaine dealer who received his supply of cocaine from Wilson. It specifically noted that Wilson had gone to Thomas's address after exchanging vehicles with his cocaine source, Guerrero-Guerrero, and that, immediately after leaving Thomas's house, Wilson took a large bag to Guerrero-Guerrero. The affidavit detailed the repeated conversations between Thomas and Wilson using coded language associated with the cocaine trade and correspondence showing plans to meet up on November 3 for Wilson to provide another supply. These facts established a fair probability that Thomas was purchasing cocaine from Wilson, that Wilson had delivered cocaine to Thomas's house, and that evidence of drug trafficking would be at the house. The magistrate judge thus properly determined that the affidavit was supported by probable cause, and the District Court rightly denied the motion to suppress.

*B. Exclusion of Evidence of Prior Drug Use*

Thomas also argues that the District Court abused its discretion by excluding evidence of prior drug use that he hoped would show he possessed cocaine only for personal use. We review the evidentiary rulings of the District Court for abuse of discretion. *United States v. Green*, 617 F.3d 233, 239 (3d Cir. 2010). To the extent the ruling is based on a legal interpretation of the Federal Rules of Evidence, we exercise plenary review over questions of law. *Id.* A district court has "wide discretion in determining the admissibility of evidence under the Federal Rules," including "weighing

any factors counseling against admissibility." *United States v. Freeman*, 763 F.3d 322, 342 n.8 (3d Cir. 2014) (citation omitted). We "will not disturb a trial court's exercise of discretion unless no reasonable person would adopt the district court's view." *United States v. Starnes*, 583 F.3d 196, 214 (3d Cir. 2009) (citation omitted).

The District Court here was perfectly reasonable in determining that the evidence Thomas proposed should not be admitted. To show that he possessed cocaine only to feed his personal addiction, Thomas sought to introduce a letter from a rehabilitation center showing that he was admitted for treatment for cocaine dependency in 2010 but absconded after a short period. He also sought to admit documents from the Probation Office that demonstrated he tested positive for substances other than cocaine while awaiting trial in 2015 and that he self-reported using cocaine. This evidence did little to demonstrate that Thomas was addicted to or using cocaine at the time of the offense. The District Court emphasized the lack of evidence that Thomas was a current cocaine user and found the positive tests for different controlled substances to be "irrelevant and inadmissible." App. 41. The Court similarly ruled that the letter from the rehabilitation facility was "too remote" and lacked relevance to activity five years later. *Id.* The letter and the information about pre-trial drug use were further unnecessary because the government did not dispute the fact that Thomas was addicted to or used cocaine. The District Court therefore did not abuse its discretion in excluding the evidence.[1]

[1] Even if the Court had erred in excluding the evidence, any error was harmless. Thomas testified to the same facts about his cocaine addiction and continued use. Given that he had the chance to present the excluded evidence through testimony, and the government did not dispute his account, any error in excluding the evidence was harmless. *See*

*C. Admission of Prior Criminal Convictions*

Finally, Thomas argues that the District Court abused its discretion by allowing the government to impeach his credibility with convictions that occurred more than ten years prior to the trial without finding that their probative value substantially outweighed the risk of prejudice as required under Federal Rule of Evidence 609(b). As noted above, we review the evidentiary rulings of the District Court for abuse of discretion but exercise plenary review over questions of law to the extent the ruling is based on a legal interpretation of the Federal Rules of Evidence. *Green*, 617 F.3d at 239. Here, any error in the District Court's legal interpretation of the rules was harmless, so we will affirm.

Federal Rule of Evidence 609 permits the admission of evidence of prior criminal convictions for the purpose of attacking a witness's credibility. Fed. R. Evid. 609. In general, a crime punishable by more than a year of imprisonment must be admitted to attack a defendant-witness's credibility if its probative value outweighs its prejudicial effect. Fed. R. Evid. 609(a)(1)(B). Rule 609(b), however, imposes a limit for convictions older than ten years. Specifically, "subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if . . . its probative value, supported by specific facts and circumstances, *substantially* outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1) (emphasis added).

---

*United States v. Greenspan*, 923 F.3d 138, 149-50 (3d Cir. 2019); *see also United States v. Hughes*, 970 F.2d 227, 234 (7th Cir. 1992).

The government sought to introduce several of Thomas's prior convictions under Rule 609(a)(1)(B), including September 2005 convictions for receiving stolen property, giving false reports to law enforcement, and giving false identification to law enforcement, and a 2007 conviction for unauthorized use of a motor vehicle. Thomas argued in opposition that the 2005 and 2007 convictions were inadmissible under Rule 609(b) because more than ten years had passed, and the probative value of the convictions did not substantially outweigh their prejudicial effect. The government responded that, although more than ten years had passed at the time of the 2018 trial, because the 2005 and 2007 convictions occurred within ten years of when the conspiracy offense began in June 2015, they were not barred by Rule 609(b) and should be admitted.

The District Court agreed with the government, holding that the convictions fell within the ten-year period. When Thomas moved for reconsideration, the District Court denied his motion, stating:

> For the reasons outlined by the government in its response, all of which are incorporated herein by reference, the Court finds that the convictions at issue fall within the relevant 10 year period under Rule 609. Moreover, even if Defendant Thomas's analysis was correct, given the type of crimes at issue (crimes involving dishonesty and motives to avoid prosecution), when the convictions did occur if analyzed under Defendant Thomas's rubric (not significantly beyond the 10 years set forth in Rule 609) and the importance of the credibility of the Defendant (great importance), the Court finds that the probative value of using these convictions for the purposes of impeachment outweighs any prejudicial effect.

App. 871-72.

The government now urges us to measure Rule 609(b)'s ten-year period from the date of the alleged offense or the date of the indictment. Such an early date has not typically

provided the end point for Rule 609(b)'s ten-year period in this Court or other circuits.[2] We have previously assumed that the relevant inquiry under Rule 609(b) is whether the date of conviction or release occurred "more than ten years prior to trial." *United States v. Williams*, 892 F.2d 296, 299, 301 (3d Cir. 1989), *superseded by statute on other grounds* as indicated in *Stinson v. United States*, 508 U.S. 36, 39 n.1 (1993). Numerous other circuits have viewed the ten-year period the same way. *See United States v. Stoltz*, 683 F.3d 934, 939 (8th Cir. 2012) (counting the ten-year period from the date of trial); *United States v. Peatross*, 377 F. App'x 477, 492 (6th Cir. 2010) (date of testimony); *United States v. Nguyen*, 542 F.3d 275, 278, 280-81 (1st Cir. 2008) (date of trial); *United States v. Thompson*, 806 F.2d 1332, 1339 (7th Cir. 1986) (date of trial). *But see United States v. Lorenzo*, 43 F.3d 1303, 1308 (9th Cir. 1995) (date of indictment); *United States v. Foley*, 683 F.2d 273, 277-78 (8th Cir. 1982) (date of offense).

We need not resolve the dispute about the correct date from which to measure Rule 609(b)'s ten-year period, however, because any error was harmless. We must assess "whether the error itself had substantial influence" on the jury. *Gov't of V.I. v. Bedford*, 671 F.2d 758, 761-62 (3d Cir. 1982) (quoting *Gov't of V.I. v. Toto*, 529 F.2d 278, 283 (3d Cir. 1976)). "Unless there is a reasonable possibility that [the error] contributed to the

[2] We also note that measuring from the date of the offense or the indictment presents certain logical challenges. Rule 609(b)'s focus is impeachment of a witness's credibility when testifying, not at the time of the offense or indictment. Further, the Rule applies to any trial witness, not exclusively criminal defendants, and is therefore relevant in cases where there is no offense or indictment date. As explained below, however, we need not confront these issues today.

conviction, reversal is not required." *United States v. Zarintash*, 736 F.2d 66, 72 (3d Cir. 1984) (alteration in original) (internal quotation marks and citation omitted).

Here, there is no reasonable possibility that the error contributed to the jury's decision to convict because the evidence of Thomas's guilt was overwhelming. At trial, the government introduced numerous recorded phone calls and text messages, surveillance footage, and the testimony of officers regarding their investigation of the conspiracy. Thomas himself chose to testify—apparently undeterred by the Court's decision to admit evidence of his convictions—and corroborated the officers' interpretations of his text messages and calls as drug-related. He admitted to possessing powder and crack cocaine that he purchased from Wilson as well as the other items recovered from his house. Thomas admitted to cooking the crack and periodically distributing drugs to friends. This testimony, in combination with the recorded calls, text messages, and surveillance footage, provided overwhelming evidence on which the jury could convict Thomas. Any error in the admission of the 2005 convictions for receiving stolen property, giving false reports to law enforcement, and giving false identification to law enforcement and the 2007 conviction for unauthorized use of a motor vehicle was harmless error.

## III. Conclusion

Because none of the issues Thomas has raised warrant reversal, we will affirm.