NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0173n.06
Filed: March 4, 2009

No. 07-4106

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| GABRIEL CASTANEDA, | ) | |
| | ) | M E M O R A N D U M |
| Defendant-Appellant, | ) | O P I N I O N |

BEFORE:    GIBBONS and McKEAGUE, Circuit Court Judges; and SHADUR, Senior
District Judge.[*]

**McKEAGUE, Circuit Judge**.  Gabriel Castaneda appeals his conviction for conspiracy to

possess and distribute drugs.  The conspiracy involved acts in Ohio and Texas, with Castaneda

providing drugs in Texas that others transported to Ohio for distribution.  Federal agents arrested the

conspirators after receiving a tip regarding the conspiracy.  While most of the defendants pled guilty,

Castaneda went to trial in the United States District Court for the Northern District of Ohio.  A jury

convicted him, and Castaneda now challenges an alleged variance between the indictment and the

proof at trial, the sufficiency of the evidence supporting his conviction, and venue.  Because the

record does not support Castaneda's arguments, we affirm the judgment below.

---

[*]The Honorable Milton I. Shadur, United States District Judge for the Northern District of
Illinois, sitting by designation.

## I. BACKGROUND

The conspiracy began when Ben Lowther contacted George Cruz to arrange a regular supply of cocaine. Lowther had been living in Texas, but, in 2004, he moved to Akron, Ohio. Cruz had supplied drugs to Lowther while Lowther was in Texas but stopped when Lowther moved. After Lowther contacted Cruz in 2006, Cruz asked Gabriel Castaneda to supply cocaine. Castaneda agreed. Castaneda supplied cocaine for all of the transactions between Cruz and Lowther. The conspiracy included about twelve transactions in 2006. The transactions involved large amounts of cocaine, beginning at three kilograms a shipment and increasing over the course of the conspiracy.

In Ohio, Lowther and Raphael Thompson pooled money to purchase the cocaine. Thompson hired Santino Camarca to be the driver for all subsequent transactions. Camarca often had others, including Terry Moore, accompany him and occasionally make the trip for him.

Each trip had a similar structure. Camarca would drive from Akron to Texas. Camarca would contact Lowther to let him know he had arrived. Lowther would contact Cruz and tell Cruz where to meet Camarca. Cruz would meet Camarca, and they would drive back to Cruz's mother's house. Once there, they would take the money out of a hidden panel in the car. Castaneda occasionally helped Cruz and Camarca count the money. If Castaneda was already there, Castaneda would call to have the cocaine delivered after the money was verified. If Castaneda was not already there, Cruz would call Castaneda and let him know the money had arrived. Castaneda would then come over, check the money, and have the cocaine delivered. Cruz and Camarca would put the cocaine in Camarca's car, and Camarca would return to Ohio. Occasionally, Cruz and Castaneda

would front Lowther and Thompson cocaine, providing cocaine in one shipment that Lowther and Thompson would pay for on the next trip.

In September 2006, Terry Moore, one of the couriers, informed law enforcement officers in Arkansas of the conspiracy. He gave the police the names of Camarca and several other couriers; he also told the police that the conspiracy used a Ford Explorer to transport the money and drugs. The officers in Arkansas sent that information to the Summit County Drug Unit in Ohio. Agents in Ohio found addresses for each of the individuals named by Moore, surveilled those addresses, and located a 2001 Ford Explorer at Camarca's residence.

After confirming that the Explorer was traveling between Ohio and Texas, agents confronted Camarca. Camarca gave them information regarding the Ohio-Texas transactions. The agents then had Camarca call Thompson and arrange another trip to Texas. The agents watched Camarca pick up $59,000 from Thompson and another $86,000 from Lowther. Soon thereafter, the agents searched both the Lowther residence and the Thompson residence. They found 1.5 kilograms of cocaine and additional money. The agents arrested Lowther and Thompson, and Lowther told the agents about Cruz.

The agents in Ohio then contacted agents in Texas. Shortly thereafter, the agents in Texas arrested Cruz. Cruz told the agents that "he could show [them] the location where his source of supply lived and where a possible stash house where drugs were stored was at."

Cruz showed the agents Castaneda's home in Houston. He also led them to a "stash house," where he indicated they could find drugs. The agents set up surveillance. As part of the surveillance, agents recorded Cruz as he called Castaneda and set up a deal. Over the course of four

conversations, Cruz and Castaneda discussed the imminent deal. They talked about the amount involved, how much to provide on credit, and how it would be delivered. The conversation also made clear that this deal was part of a long-running relationship. After talking to Cruz, Castaneda called Ortiz to have Ortiz deliver cocaine to Cruz.[1]

The surveillance led the agents to arrest Salvador Ortiz. Ortiz was arrested while in possession of cocaine. The officers also searched the stash house and found significant amounts of cocaine.

The government obtained an indictment in the Northern District of Ohio based on this conspiracy. The indictment originally named Lowther, Thompson, Camarca, and several others. A superseding indictment was issued that included Cruz, and then another superseding indictment was issued that included Castaneda. The final indictment alleged:

> Beginning at least as early as approximately 2002, to approximately October, 2006, the exact dates being unknown, in the Northen District of Ohio, Eastern Division, Southern District of Texas, and elsewhere, Ben J. Lowther, Rapheal R. Thompson, Santino Camarca, Christopher C. Moore, Terry G. Moore, Jr., Judge A Fields, III, Gregory A. Hamilton, Gabriel Castaneda, Salvador Ortiz, Jorge Alberto Cruz, Terrance J. Wharton, and Antonio Rodriguez, defendants herein, did unlawfully, knowingly and intentionally combine, conspire, confederate and agree together and with each other, and with diverse others known and unknown to the grand jury to possess with the intent to distribute and to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine.

All the defendants other than Castaneda pled guilty. Castaneda pled not guilty and went to trial.

---

[1]The record does not provide details regarding when and where Castaneda was arrested, other than the fact that the arrest occurred on October 27th.

The jury convicted Castaneda. Castaneda's attorney filed a Rule 29 motion to set aside the verdict. The district court denied the Rule 29 motion and sentenced Castaneda to 360 months in prison.

## II. ANALYSIS

### A. Variance

Castaneda alleges that there was a fatal variance between the indictment and the proof at trial because the indictment alleged a single conspiracy rather than multiple conspiracies. Because Castaneda raised the alleged variance at trial, we review the argument de novo. *United States v. Robinson*, 547 F.3d 632, 642 (6th Cir. 2008).

A variance will be reversible error "only if a defendant demonstrates that he was prejudiced by the variance and that the 'indictment allege[d] one conspiracy, but the evidence can reasonably be construed *only* as supporting a finding of multiple conspiracies.'" *Id.* (quoting *United States v. Caver*, 470 F.3d 220, 235-36 (6th Cir. 2006) (alterations in original)). In determining whether a variance exists, "the evidence must be viewed in the light most favorable to the government." *Caver*, 470 F.3d at 235-36.

Proving a single conspiracy does not require showing that each member of the conspiracy knows of or is involved in all the activities that comprise the conspiracy. *United States v. Warner*, 690 F.2d 545, 549 (6th Cir. 1982). The defendant need not know the identity of all the conspirators. *Id.* Instead, all that is required is that each conspirator "agreed to participate in what he knew to be a collective venture directed toward a common goal." *Id.* The connections between conspirators can

be minimal. *United States v. Swafford*, 512 F.3d 833, 841 (6th Cir. 2008). Where there is "interdependence of the enterprise," there is a single conspiracy. *Caver*, 470 F.3d at 233.

While Castaneda may not have known all the specifics of the conspiracy, such knowledge is unnecessary to establish a single conspiracy. "In a drug distribution 'chain' conspiracy, it is enough to show that each member of the conspiracy realized that he was participating in a joint venture, even if he did not know the identities of every other member, or was not involved in all the activities in furtherance of the conspiracy." *United States v. Martinez*, 430 F.3d 317, 332-33 (6th Cir. 2005).

The evidence in the record would not compel a reasonable trier of fact to find multiple conspiracies. Cruz testified that Castaneda was the conspiracy's sole supplier of cocaine. The government submitted recordings of Castaneda discussing sales through Cruz to others as if it were a regular occurrence. Ortiz testified that Castaneda arranged for him to deliver cocaine to Cruz.[2] Camarca testified that Castaneda would come over and make the phone call necessary to have the cocaine delivered. Agents arrested Castaneda in the midst of a transaction intended to further the conspiracy. Additionally, Castaneda supplied cocaine for multiple sales in furtherance of the conspiracy. Each shipment for which Castaneda provided cocaine was sizeable, with multiple kilograms provided each time. He and Cruz would decide how much cocaine to provide on each shipment–and how much they would provide on credit. Particularly since all inferences must be

---

[2]On appeal, Castaneda makes much of the fact that he was in jail when Ortiz made several of his deliveries. However, Ortiz testified to one specific run to George Cruz under direct order from Castaneda. Ortiz also testified that he kept cocaine at his house under Castaneda's direction.

made in favor of the government, Castaneda has not established a variance between the indictment and the evidence at trial.

Castaneda also argues that there was a variance because the evidence did not establish that Castaneda knew the conspiracy included acts in Ohio. While the indictment does indicate that parts of the conspiracy took place in Ohio, it does not assert that all members of the conspiracy acted with Ohio in mind. All the indictment required was proof of a conspiracy to distribute drugs with acts in furtherance of the conspiracy taking place in Ohio. The evidence at trial can reasonably be construed as supporting a conspiracy with these elements. As such, there was no variance between the indictment and the evidence.[3]

**B. Sufficiency of the Evidence**

Castaneda also challenges the sufficiency of the evidence for his conviction. He raised this objection before the district court. Therefore, our review is de novo. *United States v. Torres-Ramos*, 536 F.3d 542, 556 (6th Cir. 2008). All inferences must be made in favor of the government, and the evidence is sufficient if "any rational trier of fact could have found the elements of the offense beyond a reasonable doubt." *Id.*

---

[3]It is also worth noting that the jury received specific instructions on finding multiple conspiracies and a specific instruction on the venue requirement. Indeed, the district court modified the venue instruction from the Sixth Circuit Pattern Instructions to make clear that the jury must find that "the conspiracy, if any, which you find Gabriel Castaneda voluntarily joined involved . . . activity in this District." The jury is presumed to have followed its instructions, *United States v. Hynes*, 467 F.3d 951, 957 (6th Cir. 2006), and the jury instructions in this case clearly address the risk of variance Castaneda now raises on appeal.

Castaneda challenges the sufficiency of the evidence on three grounds. First, he argues that the testimony against him should be discounted because the witnesses had already entered plea agreements with the government. Second, he argues that the evidence does not connect him to a single, overarching conspiracy. Third, he contends that the evidence was insufficient to connect him to Ohio.

The first argument fails because the credibility of witnesses is not a basis to challenge the sufficiency of the evidence. "Attacks on witness credibility are simple challenges to the quality of the government's evidence and not the sufficiency of the evidence." *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006) *(*quoting *United States v. Sanchez*, 928 F.2d 1450, 1457 (6th Cir. 1991)). Where the witness has been cross-examined on the existence of his plea agreement, it is not the role of the court to revisit the jury's reliance on that testimony. *United States v. Bearden*, 274 F.3d 1031, 1039 (6th Cir. 2001). Each witness testified that he had a plea agreement, and Castaneda had the opportunity to cross-examine each witness. He cannot now challenge the jury's reliance on these witnesses as part of his sufficiency challenge.

Castaneda's second argument mirrors his variance argument, and it fails for the same reasons. The record is replete with evidence of Castaneda's involvement in the conspiracy to distribute cocaine. The evidence is sufficient for a rational trier of fact to conclude there was a conspiracy to distribute cocaine, that Castaneda intentionally joined the conspiracy, and that Castaneda participated in the conspiracy.

Castaneda's third argument misstates the requirements for proving a conspiracy. His knowledge of the ultimate destination of the drugs was not an element listed in the indictment, and

it is not an element of a 18 U.S.C. § 846 conspiracy. The elements of a drug conspiracy are "(1) an agreement to violate the drug laws, and (2) each conspirator's knowledge of, intent to join, and participation in the conspiracy." *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001). As discussed above, the evidence in the record was sufficient to satisfy each of these elements.

## C. Venue

Castaneda next argues that venue was improper in Ohio. Venue, when challenged below, is reviewed de novo. *United States v. Zidell*, 323 F.3d 412, 420 (6th Cir. 2003). At trial, the government need only prove venue by a preponderance of the evidence. *Id.* at 420-21. On appeal, inquiry is limited to "whether a rational trier of fact could find that venue is proper." *Id.* at 420.

The Constitution provides that the venue for a criminal prosecution must be the district where the crime was committed. U.S. CONST. amend. VI. The Federal Rules of Criminal Procedure codify this requirement. FED. R. CRIM. P. 18. Congress provided venue for continuous crimes in any district where the "offense was begun, continued, or completed." 18 U.S.C. § 3237(a). "Conspiracy and drug importation are continuous crimes; that is, they are not completed until the drugs reach their final destination, and venue is proper in any district along the way." *United States v. Turner*, 936 F.2d 221, 226 (6th Cir. 1991); *see also United States v. Williams*, 274 F.3d 1079, 1084 (6th Cir. 2001). Castaneda was charged with conspiracy. Multiple acts in furtherance of the conspiracy took place in the Northern District of Ohio, and Ohio was the final destination of the drugs that Castaneda supplied. The Northern District of Ohio was thus an appropriate venue for Castaneda's trial.

The Sixth Circuit also employs a substantial contacts test to determine venue. *United States v. Williams*, 788 F.2d 1213, 1215 (6th Cir. 1986). The purpose of this test is to determine venue

when "Congress has not prescribed venue for the offense." *Id.* at 1215 n.3. We have also applied

the substantial contacts test to determine which districts qualify as venues under 18 U.S.C. § 3237(a).

*See United States v. Beddow*, 957 F.2d 1330, 1335-36 (6th Cir.1992). Other circuits have used the

substantial contacts test to ensure that venue is constitutionally adequate. *See, e.g.*, *United States*

*v. Muhammad*, 502 F.3d 646, 652, 655 (7th Cir. 2007); *United States v. Reed*, 773 F.2d 477, 481 (2d

Cir. 1985). The substantial contacts test instructs courts to look to "the site of the defendant's acts,

the elements and nature of the crime, the locus of the effect of the criminal conduct, and the

suitability of each district for accurate fact finding." *Williams*, 788 F.2d at 1215. While the location

of Castaneda's acts might support venue in Texas, the elements of the conspiracy and the effect of

the conspiracy both support venue in Ohio. These two factors–the elements of the crime and the

locus of its effects–can outweigh the location of Defendant's acts and satisfy the substantial contacts

test. *See Zidell*, 323 F.3d at 423. We find they do so here.

Castaneda argues that the venue must have been foreseeable. The Second Circuit has held

that, for a conspiracy, an overt act must be foreseeable to establish venue. *United States v. Rommy*,

506 F.3d 108, 123 (2d Cir. 2007). However, neither the Sixth Circuit nor any other circuit appears

to have adopted that requirement. *See Turner*, 936 F.2d at 226 (finding venue proper without

showing that venue was foreseeable); *see also United States v. Hull*, 419 F.3d 762, 768 (8th Cir.

2005) (finding venue proper in drug conspiracy because supplier assumed the risk that large

shipments of drugs would be distributed in other states); *United States v. Angotti*, 105 F.3d 539, 545

(9th Cir. 1997) (finding that the cited authorities did not require foreseeability to establish venue for

a conspiracy); *United States v. Schei*, 122 F.3d 944, 975 (11th Cir. 1997) (finding an overt act by a

co-conspirator established venue for every individual linked to the conspiracy); *United States v. Sax*, 39 F.3d 1380, 1391 n.8 (7th Cir. 1994) (finding venue proper because defendant could be held liable for acts of his co-conspirators); *United States v. Lam Kwong-Wah*, 924 F.2d 298, 300-01 (D.C. Cir. 1991) (noting in passing that venue was proper for a conspirator whose only actions were in another district, who joined the conspiracy after the only acts in the venue were complete, and who played only a "small supporting role" in the conspiracy); *United States v. Lester*, 282 F.2d 750, 753 (3d Cir. 1960) (finding venue proper because conspirator had knowledge that subject of conspiracy would be transported out of state). Further, the Supreme Court has held that overt acts in a district justify venue for a conspiracy charge. *Hyde v. United States*, 225 U.S. 347, 367 (1912) ("As the overt acts give jurisdiction for trial, it is not essential where the conspiracy is formed."); *see also United States v. Cabrales*, 524 U.S. 1, 7 (1998).

We decline to adopt foreseeability as an additional element of venue at this time. The statutory language governing continuous offenses such as conspiracy does not reference a foreseeability requirement, 18 U.S.C. § 3237(a), and the substantial contacts test ensures the venue selected is constitutionally adequate. We reaffirm that venue in a drug conspiracy is "proper in any district where the conspiracy was formed or where an overt act in furtherance of the conspiracy was performed." *Crozier*, 259 F.3d at 519. In this case, overt acts unquestionably took place in Ohio: Lowther and Thompson pooled money in the Northern District of Ohio, and they distributed the drugs they received from Castaneda and Cruz in the Northern District of Ohio. These overt acts made venue proper for all co-conspirators, including Castaneda.

Castaneda emphasizes that the district court thought "the government's proof could be a lot stronger." This statement does not provide any assistance to Castaneda. On appeal, the question is "whether a rational trier of fact could find that venue is proper." *Zidell*, 323 F.3d at 420. That the district court recognized there could be more proof in no way suggests that there was no proof on which a rational trier of fact could find proper venue in Ohio.

## V. CONCLUSION

For the foregoing reasons, we **AFFIRM**.