RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0167p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee*,

    *v.*

RUDY GUERRERO,

        *Defendant-Appellant*.

No. 22-6015

Appeal from the United States District Court for the Eastern District of Kentucky at Lexington.
No. 5:21-cr-00136-4—Danny C. Reeves, Chief District Judge.

Decided and Filed: August 7, 2023

Before: GRIFFIN, McKEAGUE, and MURPHY, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Gal Pissetzky, PISSETZKY LAW, LL, Chicago, Illinois, for Appellant. Charles P. Wisdom, Jr., James T. Chapman, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

_____

## OPINION

_____

McKEAGUE, Circuit Judge. Defendant Rudy Guerrero was convicted of conspiracy to commit money laundering. He challenges his conviction on several grounds, including variance and venue, as well as his sentence and an evidentiary ruling by the district court. Because the errors he alleges are either not prejudicial or not error at all, we affirm his judgment and sentence.

**I.**

A. Facts

The facts of this case involve a money laundering scheme, organized by a person unknown to law enforcement ("Defendant One") who operated as a money broker for drug organizations that wanted to move money from the United States to Mexico. Defendant One orchestrated the receipt of cash in the United States, the conversion of the cash into cryptocurrency, and the conversion of the cryptocurrency back into cash in Mexico.

Agents of the Drug Enforcement Agency (DEA) managed to infiltrate the operation. An undercover agent (the "coordinating agent"[1]) would receive from Defendant One a list of cities in which drug proceeds needed to be obtained, would choose cities, and then coordinate with the DEA.[2] The DEA would select another undercover agent (the "receiving agent") to participate in the scheme by receiving illicit funds. The DEA would give the coordinating agent the receiving agent's phone number and a bill code.[3] The coordinating agent would pass that information on to Defendant One, who would pass it on to his client. The receiving agent's information would end up with the client's contacts in the chosen city, so that a money drop of the client's money could be arranged. The receiving agent would then be contacted, and the money drop would be set up and executed, with the receiving agent obtaining illicit funds from a courier. The receiving agent would then deposit the funds in an undercover DEA bank account. The money was then transferred to Defendant One as cryptocurrency, after which it would eventually be sent back to the client as cash.

Defendant Guerrero worked at a car dealership in the Chicago area. He was involved as a courier in three separate money drops with DEA Agent Corona in Chicago in May 2020. Corona's undercover information was passed by DEA Agent Stout—operating out of Lexington, Kentucky—to Defendant One, who passed it on to an unknown male (UM), who coordinated the

---

[1]This "agent" nickname (and others used in this opinion) are used for clarity's sake only—they were not used at trial.

[2]The coordinating agent communicated with Defendant One via cellphone.

[3]A bill code is a picture of the serial number on a dollar bill. It was used in the scheme to ensure that the person receiving the money was the right person.

drops via phone. On May 6, 2020, UM told Corona to meet with a man at a location near the car dealership where Guerrero worked. There, Guerrero verified Corona's bill code, then asked Corona to move his car to a side street. Subsequently, Guerrero put a backpack containing almost $150,000 into Corona's car. Guerrero also gave about $150,000 to Corona in a similar fashion on May 8 and May 12, 2020, in drops again coordinated by UM. The second drop was at the same location as the first, but the third drop took place closer to Guerrero's residence, because he was not working that day. During at least the May 6 and May 8 drops, Guerrero indicated that he knew he was delivering $150,000. The money in the bags for each drop was wrapped in rubber bands and heat-sealed in plastic. This process occurred in a nearly identical manner in multiple different cities with multiple couriers and receiving agents, including twice in Lexington, Kentucky. UM coordinated at least one other drop involving a different courier than Guerrero.

## B. Procedural History

On December 9, 2021, a grand jury indicted Defendant One, Guerrero, and several other couriers, including Carlos Gonzalez, Warren Miller, Anthony Cossu, and Oscar Palacios Espericuete, with conspiracy to launder money. On May 29, 2022, Guerrero moved to transfer venue from the Eastern District of Kentucky to the Northern District of Illinois, arguing that he only participated in allegedly illicit activity in Illinois. The district court denied the motion, stating:

> [T]he government's proffered evidence, supported by the factual bases included in the plea agreements of co-defendants, demonstrates that Guerrero's co-conspirators took actions in furtherance of a single conspiracy in this district. And venue is proper in any district where a co-conspirator took an action in furtherance of the conspiracy.

R. 97 at PID 367.[4]

Guerrero went to trial, where he was tried alone. At the close of the Government's evidence, Guerrero moved for a directed verdict, which was denied. During Guerrero's closing argument, his counsel began to expound on *Kotteakos v. United States*, 328 U.S. 750 (1946),

---

[4]The venue question was eventually posed to the jury.

detailing the law on hub and spoke conspiracies. The Government objected to these statements, and the district court sustained the objection. Guerrero was convicted of the sole count in the indictment—conspiracy to commit money laundering.[5] Guerrero filed a Rule 29 Motion for Acquittal, challenging the sufficiency of the evidence and arguing that the Government did not prove him guilty of the charged conspiracy (a conspiracy between all individuals named in the indictment), but rather only of a more limited conspiracy between himself and Defendant One. He also filed a Rule 33 motion for a new trial, making similar arguments. The district court denied the motions. Guerrero was sentenced to eighty months' imprisonment. During sentencing, Guerrero requested an acceptance of responsibility reduction and a minimal participant role reduction, which the district court declined to grant. Guerrero timely appealed.

## II.

### A. Was there a fatal variance?

Guerrero continues to argue on appeal that his conviction must be overturned due to a variance[6]—namely, that the evidence at trial failed to demonstrate an overarching conspiracy between himself and each individual named in the indictment, but rather demonstrated only a smaller conspiracy between himself and Defendant One. "Whether single or multiple conspiracies have been shown is usually a question of fact to be resolved by the jury under proper instructions and to be considered on appeal in the light most favorable to the government." *United States v. Grunsfeld*, 558 F.2d 1231, 1238 (6th Cir. 1977) (per curiam). Because Guerrero raised this issue before the district court, we will "reverse his conviction if a variance occurred and that variance affected his substantial rights." *United States v. Caver*, 470 F.3d 220, 235 (6th Cir. 2006).

---

[5]The jurors were instructed on Guerrero's multiple versus single conspiracy defense.

[6]While Guerrero occasionally styles this question as a sufficiency of the evidence question, he is in effect arguing a variance, as he admits to conspiring with Defendant One and argues solely that a different conspiracy was proven at trial than was described in the indictment, *see* Appellant's Br. at 43 ("Throughout the entire proceeding and during the PSR interview, Mr. Guerrero took full responsibility for his actions, never denied involvement, and never lied about his role or actions. . . . Mr. Guerrero admitted that he was part of a conspiracy but not the conspiracy as charged by the government."). We thus treat this argument as a variance argument. *See United States v. Mack*, 837 F.2d 254, 257 (6th Cir. 1988) ("A more difficult problem . . . is whether the government was able to prove one overall conspiracy or two separate conspiracies. This is not a sufficiency of the evidence question, but is instead a problem of variance between indictment and proof.").

A fatal variance is "a theory of error often raised but seldom seen." *United States v. Williams*, 612 F.3d 417, 423 (6th Cir. 2010). A variance occurs where "the terms of the indictment 'are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment.'" *United States v. Fields*, 763 F.3d 443, 467 (6th Cir. 2014) (quoting *United States v. Chilingirian*, 280 F.3d 704, 711 (6th Cir. 2002)). In a conspiracy case, a variance may arise where the indictment charges a single conspiracy and the evidence at trial instead demonstrates multiple, separate conspiracies. *See id.* But to overturn his conviction, a defendant must demonstrate more than that a variance occurred: he must demonstrate that he was prejudiced by the variance—that "trying multiple conspiracies under a single indictment substantially influenced the outcome of the trial." *Caver*, 470 F.3d at 237. Whether a variance occurred in this case is a difficult question that we need not answer, because Guerrero has failed to demonstrate that he was prejudiced by the alleged variance.

"The fact that a variance has been demonstrated, standing alone is not per se prejudicial." *United States v. Feagan*, 472 F. App'x 382, 387 (6th Cir. 2012) (citing *United States v. Osborne*, 545 F.3d 440, 443 (6th Cir. 2008)). The defendant bears the burden to demonstrate prejudice. *Chilingirian*, 280 F.3d at 712. In this context, prejudice can occur where (1) "the defendant is unable to present his case and is 'taken by surprise by the evidence offered at trial,'" (2) "the defendant is 'convicted for substantive offenses committed by another,'" or (3) the jury transfers "spillover" guilt due to improperly joined defendants or improperly admitted evidence. *United States v. Swafford*, 512 F.3d 833, 843 (6th Cir. 2008) (citations omitted); *see also United States v. Williams*, 998 F.3d 716, 731 (6th Cir. 2021). A variance is prejudicial if it had a "substantial and injurious effect or influence in determining the jury's verdict." *Kotteakos*, 328 U.S. at 776.

Guerrero argues only that he was prejudiced by the possibility of guilt transference, alleging that the evidence of multiple conspiracies "create[d] the improper impression of greater culpability . . . [and] lowered the government's burden of proof." Appellant's Br. at 35. In determining whether the possibility of guilt transference was sufficiently prejudicial, this Court has looked to several factors, including: "(1) the number of conspiracies the evidence establishes, (2) the number of non-conspiratorial co-defendants tried with defendant, and (3) the size of the

conspiracy alleged in the indictment." *United States v. Peatross*, 377 F. App'x 477, 485 (6th Cir. 2010); *see also United States v. Sokbay Lim*, 556 F. App'x 440, 446 (6th Cir. 2014).

Here, the potential for guilt transference or jury confusion was quite limited. Guerrero was not tried with any co-defendants, let alone a "large number." *Swafford*, 512 F.3d at 843. The jury was thus not tasked with determining the guilt of anyone but Guerrero. The total number of individuals named in the indictment as part of the conspiracy was only eight, and the actions of only four of those individuals (besides Guerrero and Defendant One, with whom he admits conspiring)—the couriers Cossu, Gonzalez, Miller, and Espericuete—were discussed at trial. Guerrero alleges that each courier participated in their own money laundering conspiracy with Defendant One, and, as stated, the actions of only four other couriers were discussed at trial, creating a total of only five allegedly separate conspiracies (including Guerrero's). Finally, the trial lasted only three days, meaning the jury did not have to sift through massive amounts of potentially confusing trial testimony. We have found similarly low numbers of potentially extraneous conspirators and conspiracies, and similarly short trials, weigh against a finding of prejudice. *See United States v. Hughes*, 505 F.3d 578, 589–91 (6th Cir. 2007) (finding no prejudice where there were "eleven alleged conspirators, six named in the indictment along with five unindicted conspirators" and noting: "In this case, six people were tried together, three of whom were part of the [relevant] conspiracy. This is not a case where the sheer number of co-defendants resulted in a likelihood of juror confusion or guilt transference."); *United States v. Bakri,* 505 Fed. Appx. 462, 469 (6th Cir. 2012) ("[T]here was minimal chance of spill-over. There were four co-defendants, two of whom testified against Bakri, and Bakri's trial was ultimately severed from the other defendants. Accordingly, the risk of transference of guilt from one defendant to another was minimal."); *Caver*, 470 F.3d at 237 ("Only three Defendants were tried, over a trial that lasted one week."); *Sokbay Lim*, 556 F. App'x at 446 (finding no prejudice where only four defendants were tried together and only four conspiracies were proved at trial); *Osborne*, 545 F.3d at 444 ("Osborne's situation . . . presents little risk of transference of guilt between the two defendants. The evidence established at most two conspiracies among only three people."); *see also United States v. Guerra-Marez*, 928 F.2d 665, 672 (5th Cir. 1991) ("The rationale behind the *Kotteakos* decision is inapplicable here. Although several defendants were initially charged in this indictment, only four proceeded to trial. While eight conspiracies were

established in *Kotteakos*, only two were proven here. Accordingly, the risk of transference of guilt was minimal."). Thus, the main factors this Court looks to weigh against prejudice.

With so few co-conspirators and a relatively small web depicted at trial, it is unlikely that the jury was confused or inappropriately weighed evidence implicating another co-conspirator against Guerrero. *See Osborne*, 545 F.3d at 444 (noting that "Supreme Court precedent supports a holding that where, as here, there is little chance of jury confusion and shifting of blame between conspiracies, a variance is harmless error," and finding that the defendant did not demonstrate prejudice where his case "involve[d] straightforward and easily understood facts"). This is especially so here because the majority of the alleged co-conspirators that Guerrero denies any connection with were on the same culpability level as him (couriers) and accused of the same crime as him (conspiracy to commit money laundering), and the witnesses—including certain co-conspirators themselves—clearly testified as to which co-conspirator did what act. *See Caver*, 470 F.3d at 237 ("Defendants were charged with conduct of approximately equal culpability . . . . And the witnesses at trial also were careful to specify what interactions they had had with each individual defendant."); *Sokbay Lim*, 556 F. App'x at 446; *Osborne*, 545 F.3d at 444.

Further, while it is unclear in this prejudice analysis the precise import of the sufficiency of the evidence to convict the defendant of at least one of the alleged conspiracies,[7] the evidence that Guerrero conspired to commit money laundering—the offense charged in the indictment— with at least Defendant One is very strong.[8] Indeed, Guerrero admits in his brief to doing so—

---

[7]Multiple cases from this circuit include statements to the effect of "if the government proves multiple conspiracies and a defendant's involvement in at least one of them, then clearly there is no variance affecting that defendant's substantial rights." *United States v. Robinson*, 547 F.3d 632, 642–43 (6th Cir. 2008) (quoting *United States v. Lee*, 991 F.2d 343, 349 (6th Cir. 1993)); *see also United States v. Matthews*, 31 F.4th 436, 455–56 (6th Cir. 2022). However, this blanket statement is in tension with cases such as *Swafford*, in which the defendant's participation in at least one conspiracy was clearly demonstrated but we found prejudice anyway. 512 F.3d at 842–844; *see also United States v. Mize*, 814 F.3d 401, 412 (6th Cir. 2016) (noting that harmless error is not the test for prejudice in this context). It therefore appears as if there is confusion in this circuit as to how definitive evidence that the defendant participated in a conspiracy—if not, perhaps, the conspiracy charged—should be factored into the prejudice analysis.

[8]As described above, evidence at trial demonstrated that Guerrero on three separate occasions gave an undercover agent that he did not know approximately $150,000 in heat-sealed packaging; that he knew on at least two occasions how much money he was delivering; and that he knew to check the bill code to confirm identity.

and claims that he never contested factual guilt of that conspiracy in any way. *See* Appellant's Br. at 43 ("Throughout the entire proceeding and during the PSR interview, Mr. Guerrero took full responsibility for his actions, never denied involvement, and never lied about his role or actions. . . . Mr. Guerrero admitted that he was part of a conspiracy but not the conspiracy as charged by the government."). With such strong evidence, it is unlikely that the jury would need to resort to guilt transference in order to convict Guerrero of conspiracy to launder money. *See Feagan*, 472 F. App'x at 387 ("We find that the variance was not prejudicial because there was overwhelming evidence of Defendant's guilt. . . ."); *United States v. Dhaliwal*, 464 F. App'x 498, 509 (6th Cir. 2012) (finding lack of prejudice where the defendant's "conviction for conspiring to distribute cocaine was based on the abundant evidence presented by the government, [the defendant's] own testimony that he drove from Utah to Michigan with the cocaine, and a rejection of his duress defense.").

Guerrero cites frequently to *Swafford*, but that case is quite distinct from his own. In *Swafford*, the defendant was indicted with forty charges related to the sale of iodine for use in methamphetamine production. 512 F.3d at 838. The indictment alleged an overarching conspiracy between Swafford and a large number of his customers, who allegedly purchased iodine from Swafford to use to cook methamphetamine. *Id.* This Court concluded that the evidence at trial demonstrated not one large conspiracy between Swafford and the methamphetamine cooks but many smaller conspiracies between Swafford and only some of the alleged cooks. *Id.* at 842. We found this variance to be prejudicial to Swafford due to spillover/the potential for guilt transference. *Id.* at 843. In so concluding, we emphasized that more than twenty customers testified about purchasing iodine from Swafford, with their testimony varying in several aspects bearing on Swafford's mens rea, including the amount of iodine purchased and Swafford's behavior during the exchanges. *Id.* In this situation, some of the exchanges testified about appeared innocent while some appeared much less so. *Id.* Without the variance, then, "[a] jury might have concluded that conspiracies existed between the defendant and certain customers but not others. The resulting guidelines sentence, in turn, would perhaps have been lower." *Id.* Here, by contrast, there were far fewer co-conspirators alleged (and who testified at trial), and there was not a mix of potentially innocent and illicit transactions that might confuse the jury. Solid evidence—and Guerrero's own admission—supports the

conclusion that Guerrero conspired with Defendant One to launder money.  And Guerrero makes no argument that being convicted for the overarching conspiracy affected his sentencing in any way.  In fact, he was sentenced based only on the money he delivered for laundering.  *Swafford* is inapposite.

This case is much more similar to *Sokbay Lim*, where we found no prejudice.  556 F. App'x at 446.  *Sokbay Lim* involved a conspiracy in which organizers recruited American citizens to "enter into sham marriages with Cambodian citizens."  *Id.* at 442.  The Government indicted twenty-two people with conspiracy to commit marriage fraud, including several Cambodian citizens who entered into the sham marriages.  *Id.* at 444.  The indictment alleged that fifty-eight people (including thirty-six unindicted alleged co-conspirators) "participated in a single, massive conspiracy to commit marriage fraud."  *Id.*  The appellants—Cambodian citizens who entered into the sham marriages—were convicted.  *Id.*  We concluded that a variance had occurred because the Government failed to demonstrate at trial one overarching conspiracy— "the government lacked any proof that [the appellants] shared the broad common goal of obtaining entry into the United States for all the other women in the conspiracy."  *Id.* at 445.  However, we found that the variance was not prejudicial.  *Id.* at 446.  We noted that the only relevant risk of prejudice in that case was guilt transference, and found that risk minimal considering the low number of co-defendants and conspiracies (four each).  *Id.*  While we acknowledged that the twenty-two people listed in the indictment, in combination with the thirty-six unindicted alleged co-conspirators, was a "high number," we stated that "the risk of prejudice is reduced when the defendants 'were charged with conduct of approximately equal culpability[.]'  And the alleged participants—the organizers, the American men, the Cambodian women—were charged with conspiracy to commit the exact same crime here: marriage fraud."  *Id.* (alteration in original; internal citation omitted).  Here, the number of co-defendants is also low, and the number of people described in the indictment far lower than in *Sokbay Lim*.  Further, Guerrero was charged with conduct of approximately equal culpability to the others listed in the indictment with whom he claims not to have conspired: acting as a courier.  Thus, there is no prejudice here as there was no prejudice in *Sokbay Lim*.

We simply cannot say that the alleged variance substantially affected the "overall fairness" of the trial. *Hughes*, 505 F.3d at 587 ("To demonstrate substantial prejudice, the appellant must show that the variance prejudiced his ability to defend himself or prejudiced the overall fairness of the trial."). Thus, we decline to find a prejudicial variance here.

B. Was venue proper in the Eastern District of Kentucky?

In a money-laundering conspiracy case, venue is proper "in any . . . district where an act in furtherance of the . . . conspiracy took place." 18 U.S.C. § 1956(i)(2); *see also Whitfield v. United States*, 543 U.S. 209, 217–18 (2005). In this circuit, "a co-conspirator's acts need not be foreseeable to a defendant for venue to properly lie in the district where such acts took place." *United States v. Iossifov*, 45 F.4th 899, 911 (6th Cir. 2022). Government agents cannot be conspirators, and thus their actions alone cannot establish venue. *See, e.g.*, *United States v. Williams,* 274 F.3d 1079, 1084 (6th Cir. 2001).

Guerrero contends that venue was improper in the Eastern District of Kentucky because, he alleges, he performed no acts in furtherance of the conspiracy in the district and neither did his only proven co-conspirator, Defendant One. This argument depends on Guerrero's other argument that the overarching conspiracy alleged in the indictment was not proven, as acts performed in furtherance of money laundering by Miller and Espericuete—Guerrero's alleged co-conspirators—were clearly performed in Lexington, Kentucky, which is in the Eastern District. Guerrero denies conspiring with anyone other than Defendant One, and thus he argues that those acts may not be used to establish venue for his case. The Government responds that evidence at trial demonstrated that Guerrero joined an overarching conspiracy that included Miller and Espericuete and their acts in Lexington. Additionally, the Government argues that even if only a smaller conspiracy between Guerrero and Defendant One was demonstrated at trial, venue was still established by Defendant One's incoming phone communications into Kentucky with Agent Stout. The district court denied Guerrero's motion to transfer, finding that there was a factual basis supporting the Government's argument that Guerrero was part of an overarching conspiracy including co-conspirators whose acts clearly could support venue in the Eastern District of Kentucky.

We review venue determinations de novo. *Iossifov*, 45 F.4th at 911. We agree with the Government that even if the evidence at trial proved only a conspiracy between Guerrero and Defendant One, venue was proper in Kentucky via Defendant One's phone communications with Agent Stout, who at all times acted in Lexington. At least two circuits have held that such communications may establish venue. *See United States v. Rommy*, 506 F.3d 108, 120 (2d Cir. 2007) (phone communications "in furtherance of the conspiracy placed by a conspirator outside the district to a government actor within the district is sufficient to establish venue in the district with regard to any member of the conspiracy"); *United States v. Gonzalez*, 683 F.3d 1221, 1225–26 (9th Cir. 2012) (finding venue established by calls between a conspirator and a criminal informant located in the relevant district, stating: "[w]e agree with the Second Circuit that '[w]hen a conspirator uses a telephone call—by whomever initiated—to further a criminal scheme, the conspirator effectively propels not only his voice but the scheme itself beyond his own physical location into that of the person with whom he is speaking'" (citation omitted)); *see also United States v. Day*, 700 F.3d 713, 727 (4th Cir. 2012); *United States v. Naranjo*, 14 F.3d 145, 146 (2d Cir. 1994). We agree with the logic of these cases and adopt that holding here: phone communications, made in furtherance of a conspiracy, from a conspirator to a government agent located in a district "take place" in that district and so establish venue there as to any co-conspirator. *See* 18 U.S.C. § 1956(i)(2). Because Defendant One made incoming phone communications to Agent Stout in the district to orchestrate the money drops performed by Guerrero, venue was proper in the Eastern District of Kentucky.

Guerrero contends that it must be reasonably foreseeable that the phone communications will reach a district in order for venue to be proper there, and that such reasonable foreseeability is missing here. It is true that the Second Circuit appears to require reasonable foreseeability in order for phone communications to establish venue. *See Rommy*, 506 F.3d at 123. However, the Second Circuit requires reasonable foreseeability for venue in conspiracy cases generally. *See, e.g.*, *United States v. Kirk Tang Yuk*, 885 F.3d 57, 69 (2d Cir. 2018) ("We have interpreted the venue requirement to demand 'some sense of venue having been freely chosen by the defendant.' We have said that it must have been 'reasonably foreseeable' to each defendant charged with the conspiracy that a qualifying overt act would occur in the district where the prosecution is brought." (internal citations omitted)). This circuit has no such requirement. *See United States*

*v. Castaneda*, 315 F. App'x 564, 569 (6th Cir. 2009) ("Castaneda argues that the venue must have been foreseeable. The Second Circuit has held that, for a conspiracy, an overt act must be foreseeable to establish venue. However, neither the Sixth Circuit nor any other circuit appears to have adopted that requirement." (internal citation omitted)). We thus decline to require reasonable foreseeability in this context where we do not require it elsewhere. *See Gonzalez*, 683 F.3d at 1226 ("[I]t does not matter [for venue purposes] whether [the defendant] knew or should have known that the [confidential informant] was located in the Northern District of California during the calls.").

C. Did the district court err in sustaining the Government's objection during Guerrero's closing argument?

Guerrero additionally alleges that the district court erred in sustaining the Government's objection to a portion of his counsel's closing argument that described hub and spoke conspiracies. Specifically, during closing, Guerrero's counsel stated:

> If you imagine a bicycle wheel where you have a hub and spokes. In order for that wheel to work, you got to have a rim. We call it a hub and spoke conspiracy. The rim is the common objective for the wheel to spin. The hub is where everything gets connected.
>
> There is a concept in the law that is called a rimless hub and wheel—hub and spoke. And when it's a rimless hub and spoke, then that is multiple conspiracies that we have here. Because if the government says that the hub is Defendant 1, he is the only one that hops from one spoke to the next with no real common goal between the spokes.
>
> Where there is no rim or a common goal connecting the spokes into a single scheme, the single hub and spoke conspiracy becomes multiple separate conspiracies between the individual spokes and the hub.

R. 177 at PID 1314–15.

The Government objected, and the district court sustained the objection, finding that the topic was more appropriate for jury instructions rather than closing arguments. Guerrero argues that the objection should have been overruled, relying on cases espousing a Sixth Amendment right to a proper closing argument, as well as the Sixth Circuit's Committee Commentary to its Pattern Jury Instructions, which states that "[t]he Committee believes that the concepts of mutual

dependance and 'chain' vs. 'hub' conspiracies are more appropriate for arguments by counsel than for instructions by the court." Pattern Crim. Jury Instr. 6th Cir. 3.09, Committee Commentary (2022 ed.). The Government, citing *United States v. Frei*, 995 F.3d 561, 565 (6th Cir. 2021), argues that we should find the Committee's commentary contrary to law. Alternatively, the Government alleges that any potential error here was harmless.

We agree with the Government that any potential error the district court made in sustaining the Government's objection on this point was harmless. "An ordinary trial error is harmless if the reviewing court finds that it did not have 'substantial and injurious effect or influence in determining the jury's verdict.'" *Batey v. Scutt*, 460 F. App'x 530, 537 (6th Cir. 2012) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)); *see also United States v. Kettles*, 970 F.3d 637, 644–45 (6th Cir. 2020). The district court ruled on the objection in question at the bench, away from the jury, who was never instructed to disregard any of Guerrero's counsel's comments. After the objection, counsel continued to talk about the concept of single versus multiple, "rimless" conspiracies. The jury was also instructed on the concept of multiple conspiracies. Guerrero does not identify any specific argument he wanted to make but was prevented from making because the district court sustained the Government's objection. He states generally that the district court "did not permit him from providing the jury an accurate statement of law that supported his defense," Appellant's Br. at 41, and that "the trial court's error was anything but harmless," Reply Br. at 10, but goes no further than that in demonstrating prejudice. Under these circumstances, if any error occurred, it was harmless. *See Batey*, 460 F. App'x at 537 ("By virtue of the prosecutor's earlier admissions, the jury had access to evidence that Jason had sexually abused Matthew in the past. Furthermore, defense counsel was able to read aloud the most damaging portions of this evidence before the prosecutor objected. In fact, defense counsel was able to fully argue that Dr. Zollar's testimony merely established that Matthew had been a victim of sexual molestation and that the jury could ultimately infer that Jason, not Petitioner, was the perpetrator of that abuse. Although the trial court sustained the prosecutor's objection, it never instructed the jury to disregard defense counsel's comments. Finally, defense counsel was able to conclude his closing argument remarks on the subject, without objection, by encouraging the jury to reference Matthew's letter for itself. We are confident that this directive, coupled with the aforementioned factors, ameliorated any prejudice

caused by the trial court's ruling."); *cf. United States v. Bermea*, 30 F.3d 1539, 1573 (5th Cir. 1994) ("The objection to Rodriguez's counsel's closing argument, in particular, was harmless because his counsel was merely prevented from showing the jury a copy of a report from a law enforcement agency, and not from arguing the contents of that report.").

D. <u>Did the district court err in denying Appellant's requested Guidelines reductions?</u>

Guerrero finally claims he was entitled to two sentencing reductions that he did not receive: one for acceptance of responsibility, and one for his minimal role in the crime. We address each in turn.

*a. Acceptance of Responsibility*

Under U.S.S.G. § 3E1.1(a), a defendant is entitled to a two-level reduction to the offense level if he "clearly demonstrates acceptance of responsibility for his offense." The Application Notes to this section state:

> Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

U.S.S.G. § 3E1.1 cmt. n.2. Guerrero argues that he "never denied that fact that he gave money to TFO Corona" and only "presented the legal argument that the government proved multiple conspiracies that were not connected as the law required" and could not establish venue. Appellant's Br. at 43. He argues that he "took full responsibility for his actions, never denied involvement, and never lied about his role or actions." *Id.* The Government counters that Guerrero contested several factual elements of the crime, including "whether he was a member of the charged conspiracy" and elements of money laundering. Appellee's Br. at 30–31. The district court declined to apply the reduction, stating:

> [I]t is clear that this defendant is not entitled to acceptance of responsibility in this case either two, three, or four levels.  The defendant did make legal arguments at the outset of the case, but expanded upon those arguments and challenged, factually, the elements of the offense and the proof that was being offered by the United States. . . . [H]e clearly contested the facts presented by the government through the witnesses and through the closing argument that he presented.

R. 179 at PID 1371.

"The defendant bears the burden of showing that he has accepted responsibility." *United States v. Paulette*, 457 F.3d 601, 608 (6th Cir. 2006).  While the standard of review for this claim is not entirely clear,[9] even under de novo review, Guerrero's argument fails.  "Even where a defendant does 'admit substantial elements of the crime charged,'" § 3E1.1(a) does not apply "if the defendant contests even one factual element of the offense." *United States v. Trevino*, 7 F.4th 414, 432 (6th Cir. 2021) (quoting *United States v. Coss*, 677 F.3d 278, 292 (6th Cir. 2012) (brackets omitted)). Guerrero challenged several factual issues.  Most blatantly, he challenged (and continues to challenge) the factual issue of whether he was part of a larger, overarching conspiracy with all of the individuals named in the indictment, or one smaller conspiracy solely with Defendant One.  We have treated the question of whether a defendant had the requisite knowledge and intent to join a larger, overarching conspiracy as a question of fact. *See, e.g.*, *Hughes*, 505 F.3d at 587 ("Whether single or multiple conspiracies have been shown is usually a question of fact to be resolved by the jury." (citation omitted)); *United States v. Sadler*, 24 F.4th 515, 541 (6th Cir. 2022); *Williams*, 998 F.3d at 730–31.  "We have repeatedly affirmed denial of this reduction where defendants attempted to minimize their role in a conspiracy or admitted to some incriminating facts but not to each factual element of the crime charged." *United States v. Austin*, 797 F. App'x 233, 246–47 (6th Cir. 2019).  While Guerrero's challenge on this front may also involve legal issues, it plainly involves factual questions as well, making § 3E1.1(a) inapplicable. *Cf. United States v. Macias Martinez*, 797 F. App'x 974, 979 (6th Cir. 2020) ("Campos is mistaken to argue that the district court revoked the acceptance-of-responsibility reduction solely on the basis of a 'legal argument' made by his counsel.  That legal

---

[9]We have at times appeared to waver between de novo and clear error review. *See United States v. Thomas*, 933 F.3d 605, 611 (6th Cir. 2019) (describing the confusion).

argument, as shown above, was based upon a factual premise that itself amounted to a substantial denial (rather than acceptance) of responsibility.").

Guerrero also challenged factual elements of the underlying crime of the conspiracy—money laundering. In his closing argument, Guerrero's counsel stated:

> I don't think the government proved those two elements either. You heard Officer Corona tell you today, nobody ever saw my client open the box, handle the box, do anything with the box. There's no evidence that he knew what was in the box. There's no evidence that he even knew that there was money in the box. There's no evidence that he had anything in his house, not even rubber bands. There's no evidence of any knowledge of criminal activity by Mr. Guerrero except for giving a bag to another individual.

R. 177 at PID 1309–10. These are clearly challenges to factual guilt. Further, Guerrero at once argues that he never challenged his factual guilt, but also that he was prejudiced by the alleged variance in the indictment described above because "[t]he government was required to prove Mr. Guerrero knew the money represented proceeds of activity that constituted some form of unlawful activity" and "[t]he evidence in support of this element was lacking as to Mr. Guerrero and the jury relied instead on evidence showing knowledge relating to the co-conspirators." Appellant's Br. at 36. This is simply contradictory; how can Guerrero claim to not have challenged factual guilt, but also claim to have been prejudiced in the form of guilt transference? *Cf. United States v. Vincent*, 20 F.3d 229, 239 (6th Cir. 1994) ("The facts in this case do not include the rare situation where a decrease is appropriate despite the fact that the defendant exercised his constitutional right to trial. In fact, defendant continues to believe that he is not guilty under two counts. This contradicts his position that he has accepted responsibility for the offenses charged.").

Guerrero clearly challenged factual guilt at trial and continues to challenge factual guilt on appeal, even if he admits certain facts. Thus, § 3E1.1 does not apply. *Austin*, 797 F. App'x at 246 –47 ("Austin's assertions of innocence were not simply, as appellate counsel now claims, legal arguments challenging the applicability of the conspiracy statute to the defendant's conduct. . . . Austin admitted to possessing drugs and a gun, which were facts that would have been difficult for him to deny. His admission to mere possession of methamphetamine was an admission to a crime with which he was not charged. On the other hand, he strongly contested

any involvement in drug trafficking or the larger drug conspiracy, thus requiring the government to prove this at a jury trial. The district court was correct to reject Austin's request for this reduction."); *United States v. Hill*, 167 F.3d 1055, 1071 (6th Cir. 1999) ("The record refutes Hill's argument that he accepted the factual basis of the charged offenses. Likewise, his argument that he was merely raising constitutional issues is not borne out by the record. The government presented evidence that Hill operated an illegal gambling business, knew that his video poker and slot machines were used for gambling, shared in the profits, and laundered the proceeds of his illegal gambling business. Hill, on the other hand, contended that he was a legitimate businessman, not someone who shared in illegal gambling profits or who laundered dirty gambling money.").

### b. *Role Reduction*

Under U.S.S.G. § 3B1.2, a defendant is entitled to a four-level decrease of his offense level if he was a "minimal" participant in the criminal activity, and a two-level decrease if he was a "minor" participant; cases falling between these two categories receive a three-level decrease. At sentencing, Guerrero requested a role reduction as a minimal participant under U.S.S.G. § 3B1.2(a). The district court denied the reduction, stating: "the Court cannot conclude that the defendant has established by a preponderance that he's substantially less culpable than the average participant in this case, including other individuals engaged in money laundering activities." R. 179 at PID 1362. Guerrero argues that his "actions showed he was substantially less culpable than other conspirators who personally coordinated the drop offs, like Gonzalez and Cossu, and those who planned, organized, and influenced the scheme, like Defendant One." Appellant's Br. at 47.

Under these circumstances, we review the district court's denial of a role reduction under § 3B1.2 for clear error. *See United States v. Daneshvar*, 925 F.3d 766, 790 (6th Cir. 2019). It is the defendant's burden to demonstrate that he is entitled to a role reduction by a preponderance of the evidence. *United States v. Miller*, 56 F.3d 719, 720 (6th Cir. 1995). A role reduction is warranted only if "his role in committing the criminal offense was such that he is 'substantially less culpable than the average participant' in the crime." *United States v. Bucio*, 857 F. App'x 217, 221 (6th Cir. 2021) (quoting U.S.S.G. § 3B1.2 cmt. n.3(A)). The Application Notes to

§ 3B1.2 contain a non-exhaustive list of factors for the district court to consider in determining whether to grant a reduction, including:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2 cmt. n.3(C).

With these factors—and the deferential standard owed the district court on this question, which "depends heavily on factual determinations," *United States v. Campbell*, 279 F.3d 392, 396 (6th Cir. 2002)—in mind, we cannot say the district court clearly erred in denying a reduction. As the district court noted, several facts in this case indicate that Guerrero's participation was "equal to or greater than other money launders," weighing against a role reduction. R. 179 at PID 1361. These facts include:

- Guerrero participated in money laundering on three separate occasions, while others involved in the case had more limited participation/delivered lower amounts of money;

- Guerrero was aware of the amount of money being laundered on at least two occasions;

- Guerrero engaged in money laundering near his place of business and his home, and helped direct where the exchange of money would take place at least once; and

- Guerrero participated in the practice of using bill codes as identity confirmation, indicating he understood the scope of the activity.

*Id.* at PID 1361–62.

Together, these facts can be plausibly read to indicate that Guerrero understood the scope of the operation, that he exercised decision-making authority within the operation, that Guerrero helped plan and organize the operation, and that Guerrero participated in the operation's criminal

activity to at least an equal, if not greater, degree than the other money launderers involved. *See, e.g.*, *Macias Martinez*, 797 F. App'x a 981 ("Ortiz made seven money-laundering trips in only five months before she was arrested; and at her suggestion the group expanded its deposits to banks in North Carolina. The district court therefore did not clearly err in finding that Ortiz was an average participant in the conspiracy rather than a minimal one."); *Miller*, 56 F.3d at 720 ("Here, defendant participated in the scheme on several occasions. Although defendant may be less culpable than some of his co-conspirators, this does not require a finding that he was *substantially* less culpable than the others."). While Guerrero argues that these facts could be read in a different way—painting himself as less involved and with less authority/control—two different plausible interpretations of the facts does not constitute clear error in this context. *See United States v. Aguwa*, 123 F.3d 418, 422–23 (6th Cir. 1997) ("The defendant argues that the evidence in this case demonstrates that he was no more than a courier who arrived on the scene only after the deal was consummated. . . . However, while this might indeed represent a plausible interpretation of the facts, it is by no means the exclusive one. . . . In any event, inasmuch as other interpretation[s] might be reasonable, we cannot conclude that the district court committed clear error."); *United States v. Gruezo*, 66 F.4th 1284, 1293 (11th Cir. 2023) (per curiam) ("As long as the district 'court's decision is supported by the record and does not involve a misapplication of the law,' the 'choice between two permissible views of the evidence as to the defendant's role in the offense will rarely constitute clear error.'") (quoting *United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016)). And while Guerrero might not have been as in control of the operation as Defendant One or been involved in steps subsequent to his money drops, merely having less authority than some other persons in an operation does not mandate a role reduction. *See Macias Martinez*, 797 F. App'x at 981 ("True, by that measure [the appellant's co-conspirator] had a leadership role; but—as the district court correctly pointed out—that does not mean that 'everyone else gets a minor role reduction.'" (citation omitted)). Thus, we cannot say that the district court clearly erred in denying Guerrero a role reduction under § 3B1.2.

### III. CONCLUSION

In sum, we AFFIRM the judgment and sentence of the district court.